MICHAEL E. GROUSE, EMPLOYEE/PLAINTIFF V. DRB BASEBALL MANAGEMENT, INC., D/B/A WINSTON-SALEM SPIRITS AND/OR DENNIS R. BASTIEN, (IND.) EMPLOYER/DEFENDANTS

No. COA94-977

(Filed 16 January 1996)

### 1. Workers' Compensation § 19 (NCI4th)— four or more employees—defendants subject to jurisdiction of Industrial Commission

Defendants were subject to the Industrial Commission's jurisdiction where the evidence tended to show that they regularly employed four or more employees during the year plaintiff was injured, even if there were fewer than four employees on the particular day plaintiff was injured.

**Am Jur 2d, Workers' Compensation § 120.**

### 2. Workers' Compensation § 22 (NCI4th)— plaintiff as employee and not independent contractor—sufficiency of evidence

The evidence was sufficient to support the conclusion that plaintiff was not an independent contractor but was engaged in an employer-employee relationship with defendants where it tended to show that plaintiff was hired by defendants as assistant general manager of a minor league baseball team and was instructed as to what tasks to perform and how to perform them; plaintiff was paid a set salary plus a sales commission on a bi-

monthly basis; plaintiff was not empowered to hire anyone and could have been terminated by defendants at any time if he had not performed his duties properly; and the fact that plaintiff initially signed an "independent contractor's agreement" with defendants was of no consequence under these facts, as the parties later altered the agreement when plaintiff requested that defendants change his status from independent contractor to employee and begin withholding taxes from his compensation.

**Am Jur 2d, Workers' Compensation §§ 167-172.**

Appeal by defendants from decision and order of the North Carolina Industrial Commission filed 12 April 1994. Heard in the Court of Appeals 22 May 1995.

*Orbock Bowden & Ruark, PLLC, by Barbara E. Ruark, for plaintiff-appellee.*

*Hatfield Mountcastle Deal Van Zandt & Mann, L.L.P., by John P. Van Zandt, III and Jeffrey I. Hrdlicka, for defendant-appellants.*

McGEE, Judge.

In January 1987, defendant Dennis R. Bastien, owner and operator of DRB Baseball Management, Inc. (DRB), hired plaintiff, Michael E. Grouse, as assistant general manager of the Winston-Salem Spirits minor league baseball team. Plaintiff began full-time employment with defendants on 2 January 1987, initially handling sales and marketing. Once the baseball season opened, plaintiff performed manual labor, including mowing, painting, and stadium repairs.

On 27 September 1987, plaintiff was mowing the grass at the stadium when the riding mower fell over, pinning him on the ground for approximately five hours. Plaintiff suffered severe injuries as a result of the accident. He spent eight weeks in the intensive care unit at Forsyth Memorial Hospital and was eventually transferred to Truman Medical Center in Kansas City for rehabilitation, which continued on an outpatient basis until June 1988. Plaintiff estimated his medical bills as a consequence of this accident exceeded $120,000.00.

Defendants received notice of plaintiff's injury on 28 September 1987 and plaintiff filed a form 18 Notice of Accident to Employer in early June 1988. Deputy Commissioner Richard B. Ford heard plaintiff's claim in the summer of 1990 and on 16 March 1993, he filed an opinion concluding, among other things, that the North Carolina

Industrial Commission has jurisdiction over the parties and subject matter of this claim and awarding compensation and medical benefits to plaintiff. Defendants appealed to the Full Commission. On 24 February 1994, the Full Commission reviewed the matter and on 12 April 1994, it filed an opinion and award affirming the Deputy Commissioner's conclusion that the Commission has jurisdiction in this matter. However, it ordered the case be reset for a hearing "in due course" regarding plaintiff's claim for workers' compensation benefits because the only issues the Commission should have considered were the jurisdictional issues. From this decision, defendants now appeal to this Court arguing: (1) defendants did not regularly employ enough people to bring it within the jurisdiction of the Commission and (2) plaintiff was an independent contractor and therefore not entitled to receive workers' compensation benefits.

### I. Regularly Employed Workers

[1] Whether an employer had the required number of employees to be subject to the Workers' Compensation Act (the Act) is a question of jurisdiction and this Court is required to review the evidence and make an independent determination. *Durham v. McLamb*, 59 N.C. App. 165, 168, 296 S.E.2d 3, 5 (1982). Although current law mandates that an employer with three employees is bound by the Act, the statute in effect at the time of plaintiff's accident on 27 September 1987 provided that employers who regularly employed four or more persons were subject to the Act. N.C. Gen. Stat. § 97-2.

Defendants contend they do not come under the Commission's jurisdiction because they "at no time regularly employed four or more employees." They admit to periodically paying extra people to work in ticket sales, concessions and stadium maintenance. However, defendants reason that baseball is seasonal, lasting from early April until late August, and only during the season did defendants hire these extra people to keep the operation running. These laborers worked only two or three nights weekly and were paid by the game or hourly with no taxes being withheld. During the off-season, defendants claim Bastien and his wife, Lisa, were the only regularly employed workers of DRB Baseball and since DRB regularly employed only two people, it was not subject to the Commission's jurisdiction under the law in force at the time of plaintiff's accident. We disagree.

If defendants did not regularly employ four or more employees, they are not subject to the Act. The term, "regularly employed" is not

defined in the statute. This Court in *Patterson v. Parker & Co.*, 2 N.C. App. 43, 162 S.E.2d 571 (1968) examined the meaning of "regularly employed", stating:

> We believe that the term "regularly employed" connotes employment of the same number of persons throughout the period with some constancy. It would not seem that the purpose of the Act would be accomplished by making it applicable to an employer who may have had, in the total number of persons entering and leaving his service during the period, more than the minimum number required by the Act.

*Patterson*, 2 N.C. App. at 48-9, 162 S.E.2d at 575. In considering whether defendants had four or more regularly employed workers, "the fact that [the employer] fell below the minimum requirement on the actual date of injury would not preclude coverage." *Patterson*, 2 N.C. App. at 48, 162 S.E.2d at 574.

There is evidence that defendants employed "with some constancy" at least four people for the year 1987, even though there were only three regularly employed workers on the day plaintiff was injured. In their brief, defendants acknowledge both Bastien and his wife were regularly employed by DRB throughout the year. At the hearing before the Deputy Commissioner, plaintiff testified defendants hired him to work full-time beginning in early January 1987 and he continued in this capacity until the day he was injured. Defendant Bastien effectively conceded plaintiff was regularly employed by DRB when he testified plaintiff was kept on as a full-time employee after the season ended.

Tim Cahill was a fourth "regularly employed" DRB employee. Cahill began full-time work for defendants as assistant general manager in charge of operations on 2 January 1987, the same day plaintiff was employed. In fact, he and plaintiff shared many of the same duties. In the off-season, Cahill handled sales and promotions and during the season, he maintained the stadium and was involved with concessions. During Cahill's deposition, he testified he had worked full-time for defendants an average of six and a half days a week.

In early September 1987, Cahill temporarily left DRB because he "had to finish [his] last semester" of college. When asked if he intended to return to work with defendants, Cahill responded, "To answer your question, when I left, I was under the understanding that I would have a job come January 2nd of 1988 with Dennis Bastien." In

fact, Cahill did return to work for defendant on 2 January 1988 and remained there until 17 October 1988.

There is evidence that for much of 1987, defendants regularly employed more individuals than the four mentioned above. Randy Vestal came to work full-time as an intern in January 1987 and two months later, he moved into the position of grounds keeper which he held until July 1987. Todd Adams worked full-time as assistant to the president from mid-May until the end of August 1987. During the baseball season, defendants hired a number of other people on an hourly or per game basis to handle concessions and ticket distribution during the games.

Finally, we note that Bastien's wife, DRB's business manager, testified there were a substantial number of times in 1987 when at least four people were working for defendants:

Q: All right. How about four of them?

A: Four of them would have been there at one time, that's correct. And—

Q: All right. And that would have been all times except for, if Mr. Cahill left two days before the end of the season, is that right?

A: From **January until the end of August**.

Since there is evidence that defendants regularly employed four or more employees during the year 1987, we hold defendants are subject to the Commission's jurisdiction and we therefore overrule this assignment of error.

## II. Independent Contractor Status

[2] Defendants' second argument that plaintiff was not entitled to workers' compensation coverage because he was an independent contractor is without merit.

In *Hayes v. Elon College*, 224 N.C. 11, 29 S.E.2d 137 (1944), our Supreme Court set forth the following factors in considering whether a person is an independent contractor:

The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump

sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Id.* at 16, 29 S.E.2d at 140. The Court also stated the test is "whether the party for whom the work is being done *has the right to control the worker with respect to the manner or method of doing the work,* as distinguished from the right merely to require certain definite results conforming to the contract." *Scott v. Lumber Co.,* 232 N.C. 162, 165, 59 S.E.2d 425, 426-27 (1950) (emphasis added).

Plaintiff testified he obtained his job with defendants after having sent resumes to most of the minor and major league teams across the country seeking "an entry level executive position." Defendant Bastien hired plaintiff as assistant general manager and instructed him as to what tasks to perform and how to accomplish them. During the off-season when plaintiff was handling sales and promotions, Bastien and plaintiff met daily to discuss the results of the sales calls for that day. Once the season began, Bastien taught plaintiff how to maintain the stadium and playing field, and when plaintiff was to use the public address system, Bastien provided him with the text of the announcements. Plaintiff was paid a set salary plus a sales commission on a bi-monthly basis. As to hiring and discharge authority, plaintiff testified he was not empowered to hire anyone and he could have been terminated by defendants at any time if he had not performed his duties properly.

The fact that plaintiff initially signed an "independent contractor's agreement" with defendants is of no consequence under these facts since the parties later altered this agreement in May 1987 when plaintiff requested that defendants change his status from independent contractor to employee and begin withholding taxes from his compensation. However, even if the agreement had not been modified, our Courts have consistently held that employers may not absolve themselves of responsibility by contractual arrangement if the injured individual would otherwise be covered under the Act. *Hoffman v. Truck Lines, Inc.,* 306 N.C. 502, 507-08, 293 S.E.2d 807, 811 (1982). Our Courts generally look beyond the contract to the actual relationship of the parties to determine the question of whether or not one is an independent contractor. *See Watkins v. Murrow,* 253 N.C. 652, 657, 118 S.E.2d 5, 8-9 (1961).

GRAHAM v. HARDEE'S FOOD SYSTEMS

[121 N.C. App. 382 (1996)]

The evidence in this case clearly supports the conclusion that plaintiff was not an independent contractor but was engaged in an employer-employee relationship with defendants. Therefore, plaintiff is an employee within the meaning of the Act and is entitled to protection under the Act.

The opinion and award of the Full Commission is affirmed.

Chief Judge ARNOLD and Judge LEWIS concur.