CARLTON B. DAVIS, EMPLOYEE, PLAINTIFF v. TAYLOR-WILKES HELICOPTER SERV-
ICE, INC., EMPLOYER AND/OR TAYLOR MANUFACTURING, INC., EMPLOYER AND
ZENITH INSURANCE COMPANY, (FORMERLY RISCORP), CARRIER, DEFENDANTS

No. COA00-948

(Filed 17 July 2001)

**1. Workers' Compensation— subcontractor—independent
contractor—attempted waiver of benefits**

The Industrial Commission did not err by concluding that
defendant company was liable for plaintiff subcontractor's com-
pensable injuries sustained in 1995 while he was working for
defendant even though the parties agreed plaintiff was an inde-
pendent contractor rather than an employee and plaintiff signed
a waiver of any workers' compensation rights in 1992, because:
(1) there is no evidence defendant obtained the necessary cer-
tificate from the Commission certifying that plaintiff was cov-
ered by workers' compensation insurance, which left defendant
liable for plaintiff's compensable injuries under N.C.G.S. § 97-19
while he was working under a subcontract for defendant; and (2)
there is no evidence that the waiver signed in 1992 was applica-
ble in any subsequent year in which plaintiff might be hired,
including 1995.

**2. Workers' Compensation— benefits—failure to file written
notice within thirty days**

The Industrial Commission did not err in a workers' com-
pensation case by finding that defendant company was not prej-

1

udiced by plaintiff subcontractor's failure to file written notice within thirty days of his accident as required by N.C.G.S. § 97-22, because: (1) plaintiff's excuse for not filing written notice was reasonable since both parties assumed plaintiff was not entitled to benefits based on their agreement that plaintiff was an independent contractor; (2) defendant had notice of the injury on the same day it occurred; and (3) plaintiff filed his claim for compensation within two years of the injury.

### 3. Workers' Compensation— average weekly wage—calculation

The Industrial Commission did not err in a workers' compensation case by its calculation of plaintiff subcontractor's lost wages using the amount he would have earned in 1995 divided by fifty-two weeks in order to get his average weekly wage based on what plaintiff was paid before his injury and what another employee was paid for completing the job after plaintiff was injured, because: (1) N.C.G.S. § 97-2(5) provides for an alternate method of calculation that will most nearly approximate the amount the injured employee would be earning if the method provided in the statute would be unfair; (2) the Commission found that using plaintiff's earnings in 1994 would be unfair based on the amount of work available for plaintiff declining from year to year; and (3) the use of the other employee's total income as the basis for establishing plaintiff's earnings would be incorrect since the employee had received income from defendant for work other than for the completion of plaintiff's work.

Appeal by plaintiff and defendants from opinion and award filed 9 March 2000 by the North Carolina Industrial Commission. Heard in the Court of Appeals 18 April 2001.

*Lore & McClearen, by R. Edwin McClearen, for plaintiff.*

*Cranfill, Sumner & Hartzog, L.L.P., by W. Scott Fuller and Jaye E. Bingham, for defendant Taylor-Wilkes Helicopter Service, Inc.*

*Reid, Lewis, Deese, Nance & Person, LLP, by Renny W. Deese, for defendant Taylor Manufacturing, Inc.*

WALKER, Judge.

At the time of his injury, plaintiff was working on a seasonal basis spraying witchweed, a parasite which attacks blade crops. Defendant

Taylor-Wilkes Helicopter Service, Inc., (Taylor-Wilkes) was under contract with the United States Department of Agriculture (USDA) to eradicate witchweed through spraying. Prior to 1992, plaintiff was employed by Taylor-Wilkes as a witchweed sprayer. However, after plaintiff suffered an injury in 1991, he was terminated. In 1992, plaintiff agreed to spray witchweed for Taylor-Wilkes as an independent contractor, to allow Taylor-Wilkes to avoid workers' compensation liability. On 13 July 1995, plaintiff was injured when the highboy sprayer he was operating tipped over. Plaintiff's claim for workers' compensation benefits provides the basis for this appeal.

On 17 November 1998, the deputy commissioner concluded that plaintiff was not entitled to benefits because he was an independent contractor and because he failed to file timely notice of his claim. Plaintiff appealed to the Commission on 23 November 1998. After a hearing, the Commission reversed the deputy commissioner and entered an opinion and award finding that plaintiff was entitled to compensation for his injury.

The findings of the Commission include, in pertinent part:

1. Plaintiff was sixty-five years old at the time of the hearing before the deputy commissioner. He attended school through the third grade and is able to read and sign his name, but he is functionally illiterate. Plaintiff has worked as a farm hand, a lumber mill worker, a farm machine builder, a crop sprayer, and as a self-employed mechanic.

2. From 1961 through 1974, plaintiff was employed during the months of March through October by [TAYLOR-WILKES] to prepare and maintain crop spraying equipment. For the remainder of the year, plaintiff was employed by Taylor-Wilkes Massey Ferguson where he repaired farm machinery. As the Taylor family owned both of these businesses, it was not unusual to assign the employees to work where they were needed.

. . .

5. In 1989, Ron Taylor rehired plaintiff to work at [Taylor-Wilkes] during the witchweed season and at [Taylor Manufacturing, Inc.] for the rest of the year. Plaintiff was paid $400.00 per week.

6. On 23 January 1991, plaintiff sustained a compensable on-the-job injury which was the subject of I.C. File No. 121630. Plaintiff received six weeks of benefits for this injury.

7. On 18 March 1991, [Taylor Manufacturing, Inc.] terminated plaintiff's employment. Personnel records reflect that plaintiff was not to be rehired because he was considered a health risk. At all times while employed by Taylor Manufacturing, Inc.] or [Taylor-Wilkes] before 18 March 1991, plaintiff received a W-2 form from his employer which reflected the withholdings from his pay for taxes and social security. Plaintiff was an employee of [Taylor Manufacturing, Inc.] or [Taylor-Wilkes] while performing services for the respective company.

8. In 1992, plaintiff negotiated with Ron Taylor, in Taylor's capacity as president of [Taylor-Wilkes], to allow plaintiff to perform [Taylor-Wilkes'] contract with the USDA. Plaintiff and Taylor agreed that plaintiff would not be hired as an employee but would be hired as an independent contractor. Plaintiff understood that Taylor and defendant-employers were unwilling to rehire him as an employee.

9. In the years from 1992 through the date of the injury in 1995, plaintiff performed witchweed spraying as he had when defendants recognized him as an employee, with a few exceptions: plaintiff was hired and paid only by [Taylor-Wilkes] and only during the witchweed season, and [Taylor-Wilkes] issued an IRS Form 1099 at the end of the year and did not deduct taxes from plaintiff's pay. As was the situation when plaintiff was an employee with defendants, an employee of [Taylor Manufacturing, Inc.] ordered all of plaintiff's spraying parts and chemicals for the spraying jobs, and [Taylor Manufacturing, Inc.] employees delivered a highboy tractor to the job sites for plaintiff's use. Plaintiff's primary assistant, Cleo McCoy, was an acknowledged employee of defendants. Plaintiff used [Taylor-Wilkes] equipment, parts, and water. On days when inclement weather prevented plaintiff from spraying, he worked at the main [Taylor Manufacturing, Inc.] plant driving a forklift and doing odd jobs at the direction of Ron Taylor or [Taylor Manufacturing, Inc.] employees; however, there is no evidence that [Taylor Manufacturing, Inc.] did or did not pay plaintiff for these services. Because of his years of experience, plaintiff needed no supervision from [Taylor-Wilkes] in the performance of his spraying duties. USDA agents directed plaintiff to the various fields to be sprayed and remained on site to view the spraying. Plaintiff performed spraying only for [Taylor-Wilkes] and was not engaged in an independent business or occupation, did not hire his own

assistants, and worked for [Taylor-Wilkes] under the supervision of the USDA.

10.  Before plaintiff returned to work for [Taylor-Wilkes] in 1992, he signed a subcontractor's waiver of workers' compensation coverage at Ron Taylor's request. Plaintiff signed this agreement voluntarily. The agreement provided that it was to be effective until the expiration date of [Taylor-Wilkes'] then-current workers' compensation policy, which was renewable yearly. However, there is no evidence that, in 1992, [Taylor-Wilkes] or Ron Taylor agreed to hire plaintiff in any subsequent witchweed season, nor is there any evidence that the waiver signed in 1992 was applicable in any subsequent year in which plaintiff might be hired, including 1995.

11.  At the end of the witchweed season in 1992, [Taylor-Wilkes'] contract with USDA in 1992 was concluded. [Taylor-Wilkes'] contract in 1995 was a new contract for witchweed spraying. Likewise, plaintiff's employment with [Taylor-Wilkes] in 1995 was a new contract for performing the spraying.

12.  In 1992, [Taylor-Wilkes] paid plaintiff $9,890.00 for witchweed spraying and provided plaintiff an IRS Form 1099. No taxes or social security were withheld.

13.  In 1993, [Taylor-Wilkes] paid plaintiff $14,248.80 for witchweed spraying and provided plaintiff an IRS Form 1099.

14.  In 1994, plaintiff asked that his paychecks be made payable to his wife, Faye. He provided Faye's social security number to defendants for the payroll forms. In 1994, [Taylor-Wilkes] paid $11,600.00 to Faye Davis and provided her an IRS Form 1099 even though plaintiff was providing the witchweed spraying services.

15.  In 1995, [Taylor-Wilkes] provided Faye Davis an IRS Form 1099 indicating payments of $5,950.00 that had been paid for plaintiff's services. Of this amount, $3,300 was paid after plaintiff's injury. If he had not been injured, plaintiff would have earned an additional $1,104.75, which was the amount paid to Cleo McCoy based on the number of acres sprayed after 13 July 1995, at $1.25 per acre. Thus, if plaintiff had not been injured, he would have earned $7,054.75 in 1995.

. . .

20. A Report of Vocational Evaluation performed on 4 December 1997 revealed that despite the surgery on plaintiff's left shoulder, his left arm remains functionally useless. Therefore, plaintiff is without the bi-manual dexterity required to perform as a diesel mechanic or as a tractor operator, jobs that he has previously performed, and he does not possess transferable skills to jobs within his residual functional capacity. Given plaintiff's education, low IQ, illiteracy, and age, he is not a candidate for retraining in another field. For these reasons, plaintiff is no longer a viable candidate for competitive employment, and he is permanently and totally disabled.

21. Plaintiff's failure to file a Form 18 Notice of Accident within 30 days of the injury as required by the Act was due to both parties assumption that plaintiff was not an employee entitled to workers' compensation but was an independent contractor as they had agreed. Plaintiff's excuse is found reasonable. Defendants had actual knowledge of plaintiff's accident within a few hours of the incident. Defendants denied plaintiff's claim based on their contention that plaintiff was an independent contractor, pursuant to the parties' agreement. Defendants were not prejudiced by plaintiff's failure to give written notice within 30 days.

22. Plaintiff filed his claim for compensation under the Act within two years of the date of injury.

Based on these findings, the Commission concluded, in pertinent part:

1. Defendant Taylor-Wilkes Helicopter Service, Inc., could not by contractual agreement absolve itself of responsibility under the Act to provide workers' compensation for plaintiff, if plaintiff would otherwise be covered under the Act. G.S. 97-6; *Hoffman v. Ryder Truck Lines, Inc.*, 306 N.C. 502, 293 S.E.2d 807 (1982); *Grouse v. DRB Baseball Management, Inc.*, 121 N.C. App. 376, 465 S.E.2d 568 (1996). Despite the parties' attempt in this case to designate their relationship by contract their actual relationship is a legal question. *Williams v. ARL, Inc.*, 133 N.C. App. 625, 628, 516 S.E.2d 187, 190 (1999).

2. Applying case law principles, plaintiff was an employee of defendant Taylor-Wilkes Helicopter Service, Inc., and was not an independent contractor when he was injured on 13 July 1995. G.S.

97-2(2); *see Hayes v. Board of Trustees of Elon College*, 224 N.C. 11, 29 S.E.2d 137 (1944).

3. Even if plaintiff could be considered an independent contractor, he would be a subcontractor of defendant Taylor-Wilkes Helicopter Service, Inc., with no employees hired to perform the contract between defendant Taylor-Wilkes Helicopter Service, Inc. and the USDA. Under G.S. 97-19, as it is written at the time of plaintiff's injury, defendant Taylor-Wilkes Helicopter Service, Inc., would be liable to plaintiff as subcontractor unless plaintiff waived in writing his right to workers' compensation. As there is insufficient evidence that a valid waiver was in effect on 13 July 1995, plaintiff would be entitled to workers' compensation benefits from defendant Taylor-Wilkes Helicopter Service, Inc., as a subcontractor. G.S. 97-19 (1994) (subsequently amended).

4. Plaintiff's injury arose out of and in the course of his employment with defendant Taylor-Wilkes Helicopter Service, Inc., and plaintiff is entitled to compensation under the Act. G.S. 97-2.

5. Plaintiff's employment was seasonal in nature. The proper method for calculating the average weekly wage in this case is to take plaintiff's annual income while working for [Taylor-Wilkes] and divide that number by 52. *Barber v. Going West Transp., Inc.*, 134 N.C. App. 482, 517 S.E.2d 914 (1999), *citing Joyner v. Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1966). Even though plaintiff did not work the full season in 1995, it would not be equitable to calculate plaintiff's average weekly wage based on the amount he earned during the 1994 season, which was $11,600.00, because the number of acres available for witchweeding was declining from year to year, and plaintiff's salary in 1994 would not fairly reflect the wages he was earning at the time of his injury. The amount plaintiff would have earned in 1995, or $7,056.75, divided by 52, more nearly approximates the amount plaintiff would be earning were it not for the injury. Accordingly, plaintiff's average weekly wage for the purpose of calculating his compensation rate is $135.71, which yields a compensation rate of $90.38. G.S. 97-2(5).

6. Due to his compensable injury, plaintiff is permanently and totally disabled; therefore, he is entitled to compensation in the weekly amount of $90.38, beginning on 13 July 1995 and continuing for the remainder of his life. G.S. 97-29.

7. Plaintiff is entitled to medical compensation for any treatment he has received or may receive in the future which is related to his compensable injury and which is reasonably calculated to effect a cure, give relief, or lessen the period of plaintiff's disability. G.S. 97-25.

Both plaintiff and defendants appeal from the Commission's opinion and award. At the outset, one of the issues on appeal is whether the Commission erred in finding that Taylor-Wilkes and Taylor Manufacturing, Inc. were not the "same business or establishment." Pursuant to an agreement announced by the parties at oral argument, we treat Taylor-Wilkes and Taylor Manufacturing, Inc. as separate entities and need not address any issues regarding Taylor Manufacturing, Inc.

[1] Taylor-Wilkes argues that the Commission erred in finding plaintiff was an employee of Taylor-Wilkes rather than an independent contractor. We first address this issue on the assumption that plaintiff was not an employee of Taylor-Wilkes, but instead was a subcontractor. Pursuant to N.C. Gen. Stat. § 97-19, in effect at the time of plaintiff's injury on 13 July 1995, plaintiff, as a subcontractor of Taylor-Wilkes, would be entitled to benefits.

In its opinion and award, the Commission found that, before plaintiff returned to work for Taylor-Wilkes in 1992, he signed a subcontractor's waiver of workers' compensation benefits at the request of Ron Taylor. The waiver provided that it would expire at the end of that year. However, the Commission found no evidence that Ron Taylor agreed to hire plaintiff in any year subsequent to 1992 or that plaintiff signed a waiver in any other year. Taylor-Wilkes' contract with the USDA in 1995 was a new contract for that year, likewise, plaintiff's employment with Taylor-Wilkes constituted a new contract to perform the spraying. On the basis of these findings, the Commission concluded that even if plaintiff were an independent contractor rather than an employee, he was a subcontractor. As such, Taylor-Wilkes would be liable for plaintiff's injuries under N.C. Gen. Stat. § 97-19 unless plaintiff waived his right to such benefits. The Commission found that the evidence was insufficient to establish that there was a valid waiver in place in 1995. Thus, we elect to first determine whether plaintiff is entitled to benefits pursuant to N.C. Gen. Stat. § 97-19.

At the time of plaintiff's injury in 1995, N.C. Gen. Stat. § 97-19 imposed conditional liability on contractors for the compensable

**DAVIS v. TAYLOR-WILKES HELICOPTER SERV., INC.**

[145 N.C. App. 1 (2001)]

injuries of their subcontractors and their subcontractors' employees. The statute provided, in pertinent part, that:

> Any . . . contractor . . . who shall sublet any contract for the performance of any work without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, issued by the Industrial Commission, stating that such subcontractor has complied with G.S. 97-93 [requiring that employers carry workers' compensation insurance] . . . shall be liable . . . to the same extent as such subcontractor would be if he were subject to the provisions of this Article for the payment of compensation and other benefits under this Article on account of the injury or death *of any such subcontractor, any principal or partner of such subcontractor or any employee of such subcontractor* due to an accident arising out of and in the course of the performance of the work covered by such subcontract. If the . . . contractor . . . shall obtain such certificate at the time of subletting such contract to subcontractor, he shall not thereafter be held liable *to any such subcontractor, any principal or partner of such subcontractor or any employee of such subcontractor* for compensation or other benefits under this Article.

N.C. Gen. Stat. § 97-19 (Supp. 1990) (emphasis added)[1]. As this statute applied to Taylor-Wilkes, it imposed liability for plaintiff's injury to the extent Taylor-Wilkes had not obtained a certificate from the Commission signifying plaintiff had workers' compensation insurance.

Our Supreme Court addressed this issue in *Southerland v. B.V. Hedrick Gravel & Sand Co.*, 345 N.C. 739, 483 S.E.2d 150 (1997). In *Southerland,* the plaintiff was injured while working as an independent contractor under a subcontract with the defendant. *Id.* at 740, 483 S.E.2d at 150. Although the plaintiff assured the defendant that he was covered by workers' compensation insurance, the defendant failed to obtain the necessary certificate from the Commission. *Id.* at 741, 483 S.E.2d 150. The plaintiff had workers' compensation insurance to cover his employees; however, he did not have coverage on himself. *Id.* In granting plaintiff's claim for benefits, our Supreme Court held that N.C. Gen. Stat. § 97-19 applied to "not only employees

---

1. We note that N.C. Gen. Stat. § 97-19 has since been amended to alter the scope of contractor's liability to subcontractors. However, this amendment became effective 10 June 1996, after the date of plaintiff's injury. *See* 1995 N.C. Sess. Laws ch. 555 § 1; *Boone v. Vinson*, 492 S.E.2d 356, 127 N.C. App. 604 (1997).

of the subcontractor but also the subcontractor himself" and that it "extended workers' compensation benefits to plaintiff under the same conditions as it extended coverage to plaintiff's employees." *Id.* at 744, 483 S.E.2d at 152-53.

In the case at bar, there is no evidence that Taylor-Wilkes obtained the necessary certificate from the Commission certifying that plaintiff was covered by workers' compensation insurance. Thus, under N.C. Gen. Stat. § 97-19, Taylor-Wilkes remained liable for plaintiff's compensable injuries while he was working under a subcontract from Taylor-Wilkes. Further, there is no evidence that plaintiff executed a written waiver of his rights under this statute. Although plaintiff signed such a waiver in 1992, that waiver provided it would only apply until the expiration of Taylor-Wilkes workers' compensation policy, which was renewable yearly. Thus, the Commission properly determined that there is no "evidence that the waiver signed in 1992 was applicable in any subsequent year in which the plaintiff might be hired, including 1995."

[2] Taylor-Wilkes next asserts that plaintiff's claim should have been barred since he failed to provide notice to Taylor-Wilkes within thirty days of the accident and failed to file his claim within two years. N.C. Gen. Stat. § 97-22 (1999) provides, in part:

Every injured employee or his representative shall immediately on the occurrence of an accident, or as soon thereafter as practicable, give or cause to be given to the employer a written notice of the accident, and the employee shall not be entitled to physician's fees nor to any compensation which may have accrued under the terms of this Article prior to the giving of such notice, unless it can be shown that the employer, his agent or representative, had knowledge of the accident, or that the party required to give such notice had been prevented from doing so by reason of physical or mental incapacity, or the fraud or deceit of some third person; but no compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby.

The Commission found that plaintiff's excuse for not filing written notice in thirty days was reasonable in that both parties assumed

plaintiff was not entitled to benefits because they had agreed plaintiff was an independent contractor.

In *Sanderson v. Northeast Construction Co.*, 77 N.C. App. 117, 334 S.E.2d 392 (1985), the defendant argued plaintiff's claim should have been barred by N.C. Gen. Stat. § 97-22 because plaintiff failed to provide written notice within thirty days of his injury. However, the record reflected that defendant knew of plaintiff's injury by virtue of a doctor's bill it received within one month of plaintiff's accident. *Id.* at 123, 334 S.E.2d at 395. This Court held that because defendant "was on notice of the injury to plaintiff soon after it occurred," defendant "could not have been prejudiced by plaintiff's failure to give written notice." *Id.*

Here, Taylor-Wilkes had notice of the injury on the same day it occurred. The Commission did not err in finding Taylor-Wilkes was not prejudiced by the lack of written notice. In addition, the Commission properly found that plaintiff filed his claim for compensation within two years of the injury.

[3] Both parties assign as error the Commission's calculation of plaintiff's lost wages. Taylor-Wilkes first contends that the Commission used an incorrect methodology in determining plaintiff's average weekly wage.

N.C. Gen. Stat. § 97-2(5) provides that where the employee's period of employment prior to the injury is less than fifty-two weeks of the calendar year, the average weekly wage should be determined by dividing the employee's income for the past year by the number of weeks the employee worked. N.C. Gen. Stat. § 97-2(5) (1999). However, where this method would be "unfair, either to the employer or employee," the statute also allows for the use of "such other method . . . as will most nearly approximate the amount the injured employee would be earning were it not for the injury." *Id.* Additionally, where "it is impractical to compute the average weekly wages as above defined, regard shall be had to the average . . . being earned by a person of the same grade and character employed in the same class of employment in the same locality or community." *Id.*

Here, the Commission found that using plaintiff's earnings in 1994 would be unfair because the amount of work available for plaintiff was declining from year to year. Thus, the Commission determined the appropriate method for calculating plaintiff's wages was by divid-

ing the amount he would have earned in 1995 by fifty-two weeks in order to arrive at his average weekly wage. *See Joyner v. Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1966); *Barber v. Going West Transp., Inc.*, 134 N.C. App. 428, 517 S.E.2d 914 (1999). The Commission determined the amount of plaintiff's earnings by adding what he was paid before the injury and what Cleo McCoy (McCoy), an employee of Taylor-Wilkes, was paid for completing the witchweed spraying after plaintiff was injured. Subsequently, the Commission found that plaintiff earned $7,056.75 in 1995, on which his compensation rate was based.

Plaintiff agrees with the method of calculation used by the Commission but contends the Commission used inaccurate evidence of McCoy's income. Plaintiff does not argue his award for lost income should not have been based on the income of McCoy. However, he asserts that the Commission erred in using "spray tickets" as evidence of McCoy's income. The "spray tickets" were turned in by McCoy to indicate the number of acres he had sprayed. Plaintiff argues that these records are incomplete and the Commission should have used McCoy's actual 1995 income, as shown by his tax forms, as the basis for the award. However, evidence was presented to the Commission that McCoy was an employee of Taylor-Wilkes and had received income from Taylor-Wilkes for work other than that from witchweed spraying. Thus, the Commission did not err in rejecting McCoy's total income as the basis for establishing plaintiff's earnings on which his benefits were based.

After a careful review of the Commission's calculations, we conclude the method utilized would not be unfair to either the employee or the employer. Further, the Commission's findings are conclusive on appeal if supported by competent evidence despite the presence of evidence to the contrary. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982).

Affirmed.

Judges HUNTER and TYSON concur.