* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. Plaintiff is Linwood L. Mooring.
2. Defendant-employer is Barnes Drywall.
3. Defendant-carrier is Builders Mutual Insurance Company.
4. Plaintiff's average weekly wage is $239.80, which yields a compensation rate of $160.00.
5. The date of the alleged injury by accident is on or about September 6, 2005. The injury is to the right foot leading to a right foot amputation.
6. Plaintiff's birth date is September 10, 1932. Plaintiff has worked as a drywall finisher most of his adult life. He alleges that on September 6, 2005, he stepped on a sheetrock nail, aggravating his foot and leading to an amputation.
7. Plaintiff went to Wayne Memorial Hospital on October 2, 2005. On October 4, 2005 he went into surgery for gangrene on his second and third toes. He was hospitalized from October 2, 2005 through October 12, 2005. He was hospitalized again from November 21, 2005 through November 30, 2005. On February 1, 2006, plaintiff underwent surgery for amputation of his right foot below his right knee.
8. The following were entered into evidence by stipulation at the hearing before the Deputy Commissioner:
 a. The Pre-Trial Agreement, marked as stipulated exhibit 1.
 b. A collection of documents including medical records, Industrial Commission forms, and correspondence collectively paginated 1-271 and marked as stipulated exhibit 2. *Page 3 
 c. Two pictures of plaintiff's shoe and a roofing nail marked as stipulated exhibit 3.
9. The following were entered into evidence during the hearing before the Deputy Commissioner:
 a. A transcript of plaintiff's recorded statement of March 20, 2006, marked as defendants' exhibit 1.
 b. An October 2, 2005 Wayne Memorial Hospital Emergency Room note marked as defendants' exhibit 2.
 c. An October 3, 2005 Wayne Memorial Hospital medical note marked as defendants' exhibit 3.
10. The issues before the Full Commission are whether plaintiff suffered a compensable workplace injury by accident on or about September 6, 2005; whether plaintiff's claim is barred by N.C. Gen. Stat. § 97-22
regarding the notification of defendants about his workplace injury; and whether plaintiff is permanently and totally disabled pursuant to N.C. Gen. Stat. § 97-29 and case law.
 * * * * * * * * * * *
Based upon all the competent evidence adduced from the record, the Full Commission makes the following:
 FINDING OF FACTS
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 74 years old and had, at most, a seventh-grade education. Plaintiff worked as a sheetrock/drywall finisher most of his adult life. Plaintiff was working as a sheetrock finisher for defendant-employer on or about September 6, 2005. *Page 4 
2. On or about September 6, 2005, plaintiff stepped on a sheetrock nail that became lodged in his shoe and penetrated his skin near or in his toes. Plaintiff did not realize that he had stepped on a nail and thought a rock was in his shoe. Sometime thereafter, plaintiff removed his shoe after work and noticed blood on his foot and discovered the nail in his shoe.
3. The circumstances of plaintiff's injury on or about September 6, 2005 constituted an interruption of his work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
4. Plaintiff did not realize the severity of his condition and continued to work on a regular basis up through September 30, 2005, a Friday. Plaintiff's supervisor Frank Barnes testified that during the weeks that plaintiff continued to work, plaintiff made no complaints and did his job in the normal way. Mr. Barnes noticed nothing unusual about plaintiff's work performance. Plaintiff also made no complaints about his foot to his wife. Plaintiff has not worked since September 30, 2005.
5. Over the weekend, plaintiff's foot got worse and on Sunday, October 2, 2005, plaintiff noticed that two of his toes had turned black. On Sunday night plaintiff's wife returned from an overnight trip to find plaintiff pale, nervous, and complaining of right foot pain. Plaintiff's wife immediately took plaintiff to the Wayne County Emergency Room. Plaintiff was diagnosed with right-foot gangrene and infection due to a puncture wound. Plaintiff reported stepping on a nail "three weeks ago." The medical note from this visit also documents that plaintiff had experienced right-foot numbness "for a long time." This numbness condition predated the injury. Furthermore, the October 3, 2005 medical note records that plaintiff had pre-existing diabetes mellitus and diabetic neuropathy in both lower legs. Plaintiff was not aware that he had diabetes. *Page 5 
6. Plaintiff remained in the hospital. On October 3, 2005, plaintiff phoned Frank Barnes, his supervisor with defendant-employer, and for the first time reported the September 6, 2005 workplace injury, explaining his infection and gangrenous condition as it related to the workplace injury. Plaintiff asked Mr. Barnes to report the injury to the insurance carrier, but Mr. Barnes did not do so because of plaintiff's delay in reporting the accident. Mr. Barnes first reported the accident to defendant-carrier in March 2006 after receiving a letter from plaintiff's attorney.
7. On October 4, 2005, Dr. Leon Stockton amputated plaintiff's second and third toes as well as some tissue from the bottom of plaintiff's foot. Plaintiff was given oral antibiotics and released from the hospital on October 12, 2005.
8. Plaintiff was again hospitalized from November 21, 2005 through November 30, 2005 due to complications of his September 6, 2005 workplace injury. On February 1, 2006, plaintiff underwent a 100% right foot amputation below his knee due to complications of the September 6, 2005 workplace injury. 9. Dr. Stockton testified by deposition and the Full Commission finds that the workplace puncture wound reported to Dr. Stockton by plaintiff caused plaintiff's right foot infection and the resultant gangrene and amputations. When asked by defense counsel about the effect on plaintiff's condition if he had sought medical treatment within 24-48 hours after stepping on the nail, Dr. Stockton responded:
 Well, that — that's speculation, I guess, as to what the wound might have looked like. I certainly don't think it would have — the infection may or may not have been as severe as it was when I saw him. . . . I can speculate and say that yes, if I had seen him and he did not have the severe infection that he had, we may have been able to, you know, salvage his toes or debrided the tissue on the bottom of his foot. I don't *Page 6 
know. I'm not trying to be evasive. I just — I don't know. I asked him that question why he didn't come sooner.
10. Although defendants argue that they were prejudiced by plaintiff's delay in medical treatment, the greater weight of the medical evidence presented by Dr. Stockton failed to support this allegation in that Dr. Stockton could only speculate whether plaintiff's condition would have been different had he received earlier medical treatment. Also, although defendant-employer had actual notice of plaintiff's injury within 30 days, Mr. Barnes failed to report the injury to defendant-carrier for over four months and did so only after he received a letter from plaintiff's counsel.
11. The credible medical and vocational evidence of record shows that, as a result of the injury sustained by plaintiff on or about September 6, 2005, taken with plaintiff's advanced age, limited education, and work history, plaintiff, since October 3, 2005, has been and is unable to perform any type of work and is unable to earn wages in any employment on a permanent basis.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows: CONCLUSIONS OF LAW 1. On or about September 6, 2005, plaintiff sustained a compensable injury by accident that arose out of and in the course of his employment with defendant-employer when he stepped on a nail that became lodged in his right shoe and injured his foot. The circumstances of plaintiff's injury on or about September 6, 2005 constituted an interruption of his work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. N.C. Gen. Stat. § 97-2(6); Harding v. Thomas Howard Co.,256 N.C. 427, 124 S.E.2d 109 (1962). *Page 7 
2. In a workers' compensation claim for permanent and total disability, plaintiff has the burden of proving the existence and extent of disability. Hunt v. North Carolina State University,159 N.C. App. 111, 582 S.E.2d 380 (2003), citing Saunders v. EdentonOb/Gyn Ctr., 352 N.C. 136, 530 S.E.2d 62 (2000); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). A plaintiff may meet the initial burden by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of pre-existing conditions, such as age, inexperience, or lack of education, to seek other employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, 143 N.C. App. 259, 535 S.E. 2d 485 (2001); Russell v.Lowes Product Distribution, supra. When an employee meets his burden of showing disability, the burden shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
3. In the present case, due to his injury by accident, plaintiff is incapable of work in any employment given the physical limitations he suffers, taken with his advanced age, limited work history, lack of transferable skills, and seventh grade education. Moreover, it would be futile for plaintiff to search for employment given his age, work history, transferable skills, and education. Defendants have provided insufficient evidence that suitable jobs are available to plaintiff and that plaintiff is capable of obtaining a suitable job, given his physical and vocational limitations. For these reasons, plaintiff is totally and permanently disabled. N.C. Gen. Stat. § 97-29. *Page 8 
4. Because plaintiff is found to be totally and permanently disabled, he is entitled to receive total and permanent disability compensation at the rate of $160.00 per week beginning October 3, 2005, and continuing for the remainder of his lifetime. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury of September 6, 2005. N.C. Gen. Stat. § 97-25.
6. Plaintiff's claim is not barred by N.C. Gen. Stat. § 97-22 which requires an injured employee to give written notice of his injury to his employer within 30 days in order to obtain compensation for that injury. An employee may be excused from the notice requirement if he has a reasonable excuse for not giving notice and the employer was not prejudiced by the delay. N.C. Gen. Stat. § 97-22; Westbrooks v. Bowes,130 N.C. App. 517, 503 S.E.2d 409 (1998). An employee's failure to provide written notice of injury does not bar the claim if the employer has actual knowledge of the injury. Davis v. Taylor-Wilkes HelicopterServ., Inc., 145 N.C. App. 1, 549 S.E.2d 580 (2001). In addition, the burden is on defendants to show prejudice from the delayed notice.Westbrooks v. Bowes, supra.
7. In this case, plaintiff had reasonable excuse for the delay in notification to his employer, based on plaintiff's ability to continue working for weeks after the incident, the delayed worsening of plaintiff's condition, plaintiff's numbness, and plaintiff's inability to understand the severity of his condition due to his limited education. Plaintiff gave immediate actual notice to defendant-employer once plaintiff fully understood the nature and seriousness of his condition, which actual notice was within 30 days of the injury. N.C. Gen. Stat. §97-22; Lakey v. U.S. Airways, Inc., 155 N.C. App. 169, 573 S.E.2d 703
(2002), cert. denied, 357 N.C. 251, 582 S.E.2d 271 (2003); Jones v.Lowe's *Page 9 Companies, 103 N.C. App. 73, 404 S.E.2d 165 (1991). In addition, defendants failed to prove that they were prejudiced by any delay in written notification. Id.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. As the result of his compensable injury of September 6, 2005, defendants shall pay plaintiff, subject to the attorney's fee approved below, total and permanent disability compensation at the rate of $160.00 per week from October 3, 2005 and continuing for the remainder of his lifetime. Those payments that have accrued shall be paid in a lump sum.
2. Defendants shall provide medical treatment resulting from plaintiff's compensable injury to the extent that such treatment is designed to effect a cure or give relief.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel to be paid as follows: every fourth compensation check due plaintiff shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel. The accrued portion of this fee shall be deducted from the lump sum due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This 2nd day of January 2008.
 S/______________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/ ______________________ DIANNE C. SELLERS COMMISSIONER
 S/ ______________________ PAMELA T. YOUNG CHAIR