* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission and subject to the North Carolina Workers' Compensation Act.
2. Plaintiff was employed by defendant-employer on July 26, 2004.
3. Companion Property Casualty Group was the carrier on the risk.
4. On July 26, 2004, plaintiff sustained a compensable injury to his right knee while working as a concrete worker for defendant-employer.
5. Defendants accepted the compensability of plaintiff's right knee injury by filing a Form 33R on March 29, 2006.
6. Plaintiff's exhibits were received into the record at the Deputy Commissioner's hearing.
7. The issues before the Full Commission are whether plaintiff's injuries to his shoulder and back are causally related to his compensable injury by accident on July 26, 2004; and, if so, what benefits plaintiff is entitled to receive; and what is plaintiff's correct average weekly wage.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 44 years old and completed the equivalent of the ninth grade in Honduras. Plaintiff came to North Carolina in 1998 and began working for defendant-employer as a concrete worker six months prior to his injury. *Page 3 
2. On July 26, 2004, plaintiff sustained an admittedly compensable injury by accident to his right knee arising out of and in the course of his employment with defendant-employer. Plaintiff was trying to change the disk on the saws used to cut concrete. The sun was hot, so plaintiff went in front of a truck to change the disk in the shade. Ernesto Hurtado, defendant-employer and plaintiff's boss, started driving the truck and ran over plaintiff's right foot. Plaintiff was wearing a harness attached to his waist that got caught on the towing hook on the truck. Plaintiff explained that when the truck caught the harness, he was thrown back and his "arm went up." Plaintiff testified that his back, knees and shoulder were hit by the truck. Plaintiff was taken by ambulance to the hospital immediately following the injury.
3. At the hospital on July 26, 2004, plaintiff complained of right knee and ankle pain, with tingling in right lower leg and foot, left knee and forearm pain, and mid-lower back pain; however, plaintiff did not complain of any right shoulder pain. Plaintiff testified that the pain in his knees and back was greater than in his shoulder. Medical notes indicate that plaintiff described that he was hit in the low back by the truck and that his right and left knees were pinned to the ground. X-ray reports were negative and emergency room physicians diagnosed plaintiff with abrasions on his right and left knees and his left arm, and multiple contusions.
4. On August 23, 2004, plaintiff returned to the hospital for re-evaluation of his right knee. Plaintiff did not complain of any injury or pain in his shoulder. X-rays of plaintiff's right foot and knee were negative. Plaintiff was diagnosed with a sprained foot, knee and leg and discharged with crutches and instructions to follow up with Wake Orthopedics. Following his August 23, 2004 visit, plaintiff did not seek medical treatment until he saw Dr. Mark Wood on January 16, 2006, because plaintiff did not have health insurance. Plaintiff testified that between August 23, 2004 and January 16, 2006, he sustained no other injuries or accidents. *Page 4 
5. Three weeks after his injury by accident on July 26, 2004, plaintiff returned to work for defendant-employer. Plaintiff was instructed to continue performing his regular job, including polishing concrete, carrying wheel barrels of concrete, using a sledgehammer, and operating the finishing machine. Shortly after he started work, plaintiff told defendant-employer that he could not perform those job duties because of his injuries and he was instructed to leave the job.
6. On January 16, 2006, plaintiff saw Dr. Wood at Wake Orthopedics for shoulder and knee pain, more painful on right than left. Dr. Wood noted plaintiff had "a new complaint of low back pain." Dr. Wood diagnosed plaintiff with a right shoulder injury with possible continued subluxation, right knee pain with early degenerative joint disease and possible meniscus tear, and low back pain. Dr. Wood recommended an MRI of plaintiff's right knee and right shoulder. Dr. Wood noted that there was no back injury prior to plaintiff being scheduled in his office. Dr. Wood referred plaintiff to a local doctor for further evaluation of his low back pain because he does not treat back injuries.
7. On February 1, 2006, plaintiff returned to Dr. Wood, who noted that the right knee MRI revealed a posterior medial meniscal tear and the MRI of his right shoulder showed questionable anterior cruciate ligament laxity and labral changes, likely chronic, with a question about a prior subluxation or dislocation. Dr. Wood noted that plaintiff elected arthroscopic surgery for his right knee and opted to pursue a non-operative course for his shoulder. At the time of the Deputy Commissioner's hearing, plaintiff had not returned to Dr. Wood and had not undergone right knee surgery. Arthroscopic surgery on plaintiff's knee was scheduled for February 28, 2006, but cancelled when defendant-carrier did not authorize the surgery. Plaintiff *Page 5 
testified that he continues to have pain in his right knee, shoulder and back and that he takes over the counter pain medications.
8. At his deposition, Dr. Wood testified that plaintiff's "documented injuries" on July 26, 2004 more likely than not significantly contributed to the injuries for which he treated plaintiff in 2006. Dr. Wood further testified that as of February 2006, plaintiff had not reached maximum medical improvement in regard to his knee. Dr. Wood explained that he would not expect plaintiff's knee symptoms of pain, popping, catching and locking to improve without surgery; however, he felt that plaintiff's shoulder symptoms may improve with physical therapy. Dr. Wood did not give an opinion regarding plaintiff's ability to continue working, but did state that plaintiff should avoid activities that make his symptoms worse.
9. On June 28, 2005, plaintiff filed a Form 18, but named the wrong carrier. On July 29, 2005, plaintiff filed a Form 18 naming defendant-carrier and stating that his injuries were to his back, neck, hips, knees and hands. Neither Form 18 mentions an injury to plaintiff's shoulder.
10. On January 6, 2006, defendants filed a Form 61, accepting the compensability of plaintiff's claim for the injury to his right knee, but denying payment of temporary total disability and temporary partial disability benefits due to lack of notice and delay in filing the claim. However, defendants had actual notice of plaintiff's injury on the date of the accident in that Mr. Hurtado, plaintiff's employer, was driving the truck that ran over plaintiff.
11. The Commission finds that plaintiff has not shown by the greater weight of the evidence that his right shoulder condition is causally related to the July 26, 2004 incident. Plaintiff is not found to be credible regarding the alleged injury to his shoulder resulting from the July 26, 2004 injury by accident. Plaintiff did not report shoulder problems following his injury *Page 6 
until approximately a year and a half later and did not list a shoulder injury on his Forms 18 or 33. Although Dr. Wood causally related plaintiff's right shoulder condition to the compensable injury by accident, his opinion was based on plaintiff's representations to him that plaintiff had right shoulder symptoms since the date of the accident. The Commission finds that plaintiff's shoulder condition is not related to his injury by accident on July 26, 2004.
12. Despite being requested to do so, defendants did not file a Form 22 in this case. In the six months plaintiff worked for defendant-employer prior to his July 26, 2004 injury, he testified that he earned between $600.00 and $900.00 per week, after taxes, and that he was paid in cash. In his response to defendant's interrogatories, plaintiff alleges that his average weekly wage prior to his July 26, 2004 injury by accident was $600.00 per week and that since August 15, 2004, his average weekly wage was $278.84 and that his earning capacity has been reduced by $321.16 per week. In the three weeks plaintiff was out of work following his July 26, 2004 injury, he received $350.00 per week from defendant-employer. The Commission finds that plaintiff's average weekly wage is $600.00 per week.
13. After his injury by accident, plaintiff worked for various employers. From on or about September 27, 2004 until February 20, 2005, plaintiff worked for Mike Stevens and earned approximately $200.00 per week. From on or about February 14, 2005 until April 17, 2005, plaintiff earned approximately $350.00 per week working for Carlos Benitez. Plaintiff quit his employment with Carlos Benitez because he could not perform the job due to his knee pain. From on or about April 25, 2005 until December 16, 2005, plaintiff also worked for Carlos Benitez's cousins, Oscar and Omar Benitez, each owning their own company. Plaintiff earned $13.00 per hour, or approximately $360.00 per week. After working for the Benitez's, plaintiff also worked for Roman from December 19, 2005 until February 19, 2006, earning $450.00 per *Page 7 
week. Plaintiff did not continue his employment with Roman due to his knee and back pain. On or about February 27, 2006, plaintiff was hired by Salazar Concrete to work forty hours per week, but only worked 16, 21, and 25 hours in various weeks, earning approximately $280.00 per week. Plaintiff stopped working with Salazar Concrete on or about May 26, 2006, and did not work for six weeks due to pain in his legs and back. Only Salazar Concrete paid plaintiff by check, all other employers paid plaintiff in cash. At the time of the Deputy Commissioner's hearing on September 7, 2006, plaintiff was again working for Omar Benitez, earning approximately $280.00 per week.
14. Since his injury on July 26, 2004, plaintiff has worked between 18 and 36 hours per week and has not worked five days or more per week due to the pain in his back and knees. Thus, after August 2004, plaintiff's wages were less than he was earning at the time of his injury by accident and plaintiff's decreased ability to earn wages was due to his disability resulting from the injury by accident on July 26, 2004.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On July 26, 2004, plaintiff sustained an admittedly compensable injury by accident to his right knee arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff failed to carry the burden of proving by competent evidence that a causal relationship existed between the work-related accident and his right shoulder condition. Click v. FreightCarriers, 300 N.C. 164, 265 S.E.2d 389 (1980). *Page 8 
3. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury."Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286,disc. review denied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident.Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). In the case at bar, the greater weight of the medical evidence establishes that plaintiff's right knee condition is directly and causally related to his injury by accident on July 26, 2004.
4. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, including surgery to his right knee, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. Plaintiff is not entitled to treatment for his right shoulder condition which is not causally related to the compensable injury by accident. N.C. Gen. Stat. §§ 97-2(19);97-25.
5. N.C. Gen. Stat. § 97-2(5) sets forth five methods, listed in order of preference, to determine a claimant's average weekly wage.McAninch v. Buncombe County Schools, 347 N.C. 126, 489 S.E.2d 375
(1997). The first two methods require that plaintiff's employment prior to the injury extend over a period of 52 weeks. The third method applies to employees who worked for less than 52 weeks preceding the injury and calculates their average weekly wage by dividing the actual earnings by the number of weeks worked. The fourth method requires evidence about what a person of the same grade and character employed in the same class of employment in the same community would earn; however, this information is absent in the record. The fifth method is most appropriate in this case as it most nearly approximates the amount for which *Page 9 
plaintiff would be earning, were it not for the injury. As a result, the Commission finds that plaintiff's average weekly wage is $600.00 per week. N.C. Gen. Stat. § 97-2(5).
6. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
7. After August 2004, plaintiff showed that he continued to be partially disabled by producing evidence that after a reasonable job search, he obtained other employment at wages less than those earned prior to the compensable injury. Larramore v. Richardson Sports Ltd.Partners, 141 N.C. App. 250, 540 S.E.2d 768 (2000), aff'd percuriam, 353 N.C. 520, 546 S.E.2d 87 (2001). *Page 10 
8. As the result of his compensable injury by accident on July 26, 2004, plaintiff was temporarily partially disabled and entitled to payment by defendants of temporary partial disability compensation at the rate of two-thirds of the difference between the average weekly wages plaintiff earned prior to the injury by accident and the diminished wages he was able to earn beginning August 15, 2004 for a maximum of 300 weeks from the date of injury or until he earns the same or greater wages as he did before his compensable injury. N.C. Gen. Stat. § 97-30.
9. Plaintiff's claim for his injury to his knee is not barred by N.C. Gen. Stat. § 97-22, which requires an injured employee to give written notice of his injury to his employer within 30 days in order to obtain compensation for that injury. An employee may be excused from the notice requirement if he has a reasonable excuse for not giving notice and the employer is not prejudiced by the delay. N.C. Gen. Stat. § 97-22;Westbrooks v. Bowes, 130 N.C. App. 517, 503 S.E.2d 409 (1998). An employee's failure to provide written notice of injury does not bar the claim if the employer has actual knowledge of the injury, as in the case before us. Davis v. Taylor-Wilkes Helicopter Serv., Inc.,145 N.C. App. 1, 549 S.E.2d 580 (2001). In addition, the burden is on defendants to show prejudice from the delayed notice and in this case, defendants presented no such evidence. Westbrooks v. Bowes, supra.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, defendants shall pay plaintiff temporary partial disability compensation at the rate of two-thirds of the difference between the *Page 11 
average weekly wages plaintiff earned prior to the injury by accident and the diminished wages he was able to earn, beginning August 15, 2004, subject to the 300-week limitation of N.C. Gen. Stat. § 97-30.
2. Defendants shall pay all related medical expenses for plaintiff's right knee incurred or to be incurred by plaintiff as the result of his injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and 25% of the accrued compensation shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This 24th day of January, 2008.
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 DISSENTING: *Page 12 
 S/______________________ BUCK LATTIMORE COMMISSIONER *Page 13