WILLARD SANDERSON, EMPLOYEE, PLAINTIFF· v. NORTHEAST CONSTRUC-
TION CO., EMPLOYER; UNITED STATES FIDELITY & GUARANTY CO.,
CARRIER, DEFENDANT

No. 8410IC1144

(Filed 1 October 1985)

1. **Master and Servant § 65.2— workers' compensation—back injury—not engaged in routine duties**

    There was no evidence to support the Industrial Commission's finding that plaintiff was engaged in routine duties in his customary fashion and that plaintiff's back injury was not caused by an accident where plaintiff, a carpenter, injured his back while unloading tile during a time when there was no carpentry work to be done. All of the evidence, including that solicited from witnesses produced by defendant, showed that plaintiff was not performing his routine duties in his customary way when he hurt his back.

Sanderson v. Northeast Construction Co.

2. Master and Servant § 90— workers' compensation—notice to employer

The Industrial Commission did not err by not finding that plaintiff failed to give timely written notice or by not dismissing plaintiff's claim for not giving timely written notice where plaintiff injured his back on 2 February 1982, plaintiff notified his crew leader two weeks later, it was not clear from the record whether the crew leader repeated to superiors what he was told by plaintiff, but it was clear that defendant knew about the accident within a month of its occurrence because defendant received a doctor's bill in late February or early March and a claims adjuster spoke with plaintiff in March. Defendant was on notice of the injury soon after it occurred, certainly soon enough for a thorough investigation, and could not have been prejudiced by plaintiff's failure to give written notice.

APPEAL by plaintiff from the Opinion and Award of the North Carolina Industrial Commission filed 27 June 1984. Heard in the Court of Appeals on 14 May 1985.

*Jeffrey S. Miller for the plaintiff appellant.*

*Gaylor, Edwards, McGlaughon, Collins and Vatcher by Jimmy F. Gaylor for the defendant appellees.*

COZORT, Judge.

Plaintiff filed a claim for workers' compensation for injury to his back which he alleged was caused by an accident at his work place on 2 February 1982. Deputy Commissioner Stephens denied plaintiff's claim on the grounds that plaintiff's testimony concerning a fall was not credible and that the injury occurred while plaintiff was performing "routine duties in his customary fashion." The Full Commission, Commissioner Vance dissenting, upheld the denial of plaintiff's claim. We reverse.

The primary issue for our consideration is whether the injury to the plaintiff occurred as a result of an accident, as contended by the plaintiff, or in the course of plaintiff's performing routine duties in his customary fashion, as contended by his employer. The facts are as follows:

Plaintiff is a carpenter who, at the time of the injury, was employed by Northeast Construction Company. Northeast had a contract to renovate and remodel houses to be used by the military. Plaintiff's primary responsibilities as a carpenter were rough framing, installing two-by-fours, and doing termite damage repair. At the time the injury occurred, Northeast was between

phases in a project, and there was little carpentry work to be done. During those periods, the carpenters did a variety of odd jobs, whatever needed to be done around the job site. On 2 February 1982, plaintiff was directed by his foreman to move boxes of floor tile from a warehouse to a storage shed. Each box weighed from 50 to 75 pounds. Plaintiff would take a box of tile off a forklift and carry it inside a small tin shed which had a doorway approximately five feet high. Plaintiff testified he had to bend over to get through the doorway. He testified at the hearing that while carrying one of the boxes through the doorway, he tripped over the board which went across the bottom of the doorway and fell, hurting his back. Plaintiff tried to work for two weeks after the injury. With the pain increasing, he reported the injury to one of his co-workers, a crew leader, and left work. Plaintiff initially received conservative treatment from a physician in Kinston. In March, he was admitted to Pitt Memorial Hospital where a neurosurgeon performed a laminectomy to repair a ruptured disc in the lower portion of plaintiff's back.

At the hearing, the insurance carrier produced a claims adjuster who offered a recorded statement taken from plaintiff over the phone when plaintiff was released from the hospital. In the statement plaintiff did not blame his injury on tripping or falling; rather, he stated he "overstrained" his back, that he felt a "pop," a "sharp pain" when he bent over to carry the tile into the building. His statement concluded: "I had to bend down as I entered the building. I could have twisted my back in an abrupt or unusual manner. I wouldn't say about that, I just don't know."

In the Opinion and Award of Deputy Commissioner Stephens, which was affirmed and adopted by the Full Commission, the following findings of fact were made:

7. On 29 March 1982 plaintiff gave a recorded statement to a representative of the defendant insurance carrier. Plaintiff told such representative that he was carrying boxes of tile into the shed "where [he] had to bend over and it just overstrained [him]." Plaintiff responded negatively to several questions as to whether he had slipped or fallen or twisted himself in any unusual manner.

8. At the hearing of this case, plaintiff testified that he experienced the sharp pain in his back when he tripped over

the doorsill while carrying a box of tile into the shed and fell. Such testimony is not accepted by the undersigned as credible.

9. Plaintiff's regular job duties included doing any odd jobs around the construction site which had to be done. There is no evidence in this record that carrying boxes of tile, or other materials of a similar weight, into the storage shed in the manner in which plaintiff carried these boxes was an unusual task for him to perform. Likewise, there is no evidence that the conditions and circumstances of his employment on 2 February 1982 were different and, thus, likely to result in unexpected consequences. The greater weight of the evidence is that plaintiff was performing routine duties in his customary fashion and that he suffered an injury to his back while doing so.

From these and other findings the Commission concluded: "The injury to plaintiff's back on 2 February 1982 was not caused by an accident arising out of and in the course of his employment . . . . Thus, he is not entitled to the benefits of the Workers' Compensation Act."

On appeal plaintiff argues that the Full Commission erred in finding as fact that plaintiff was "performing routine duties in his customary fashion" and concluding therefrom that the back injury was not caused by an accident. Plaintiff points out that he was employed as a carpenter, and carrying boxes of tile is not the "routine duty" of a carpenter. In addition, plaintiff submits that to bend over to get through a low door while carrying a fifty-pound box of tile qualifies as performing a task in an unusually cramped or awkward position which with the injury constitutes a compensable accident under G.S. 97-2(6). Defendants respond that the evidence shows that on this particular job site it was customary for carpenters to do odd jobs when there was no carpentry work to be done. They contend that the findings of the Commission fully support a conclusion that the back injury was not caused by accident.

When reviewing appeals from the Industrial Commission, the Court is limited in its inquiry to two questions of law: (1) whether there was any competent evidence before the Commission to support its findings of fact; and (2) whether the Commission's find-

ings of fact justify its legal conclusions and decision. *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E. 2d 101 (1981). The Commission's findings of fact are conclusive on appeal if supported by competent evidence. *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981). This is so even if there is evidence which would support a finding to the contrary. *Id.* "In deciding whether there was an accident, the only question on appeal is whether there was 'an unlooked for and untoward event' or 'the interruption of the routine work and the introduction thereby of unusual conditions.' [Citations omitted.]" *Ross v. Young Supply Co.*, 71 N.C. App. 532, 535, 322 S.E. 2d 648, 651 (1984).

[1]   With these rules in mind we turn to the question of whether any competent evidence supported the finding of the Commission that plaintiff was engaged in "routine duties in his customary fashion" when he suffered the injury to his back, thus supporting the Commission's conclusion that the "injury to plaintiff's back on 2 February 1982 was not caused by an accident," barring his entitlement to benefits under the Workers' Compensation Act. Our review of the record compels our holding that there is no evidence to support the Commission's finding that plaintiff was engaged in "routine duties in his customary fashion." Instead, all the evidence, including that solicited from witnesses produced by Northeast, shows that plaintiff was *not* performing his routine duties in his customary way when he hurt his back.

The plaintiff's evidence on his duties and responsibilities is not very helpful. He did not describe his normal duties as a carpenter. His only testimony on this issue was that he "wouldn't have thought that unloading tile was my normal duty at Northeast Construction but I done it anyway." The remaining witnesses for the plaintiff gave no testimony about plaintiff's duties.

Northeast produced three witnesses who testified about plaintiff's job duties and the responsibilities of carpenters for Northeast, especially the duty to unload tile. Timothy Hiehle, a Vice President and project manager for Northeast, testified:

> Mr. Sanderson was a carpenter with our company. As a carpenter with our company, Mr. Sanderson was primarily responsible for rough framing, installing two-by-fours, doing termite damage repair.

\* \* \* \*

Mr. Sanderson possibly had been laid off for a few days prior to January. It was a time there where we had our carpenters doing laborer's work. It is not unheard of for a carpenter to do a laborer's work on that job.

\* \* \* \*

In February tile was being installed somewhere. It was normally the case once the tile was put into the shed it would have stayed there for a while, it would remain there. We would not have consistently, every day, put tile into that little shed for a whole month. I would agree that Willard Sanderson didn't move any tile in January. I would agree he normally didn't move tile.

Edwin C. Kerr is the crew leader to whom plaintiff reported his injury. He normally worked with plaintiff and did work with plaintiff the day plaintiff was injured. He testified:

We worked in the same unit doing probably the same work.

I never stacked any tile. Sometimes I moved tile. Not full boxes. I go get a little bit of tile here and there. The carpenters did not normally move and stack tile. . . .

We all had periods of time when we didn't have any carpentry work to do.

\* \* \* \*

In situations when we didn't have anything to do, we would mess around the warehouse, painting tools here and there. . . .

Stephen Stout, a carpenter for Northeast, gave contradictory testimony on the responsibility of unloading tile. He first testified: "To my knowledge I do not recall ever having unloaded tile or being assisted by Mr. Sanderson in unloading tile at Northeast Construction. I don't recall ever having seen him unloading tile around the warehouse or shed there. It somewhat refreshes my memory that it has been testified to that four people unloaded tile on that date. I was not assisting my four people on that day unloading tile." He later testified: "I don't know whether it was the 2nd or not, most of the time we demolish asbestos. We did not

move tile." And finally, "I am a carpenter. I was moving tile because I was driving a forklift. I drove it most of the time. . . . As far as I know on February 2, there were three people helping me unload tile."

This evidence requires us to find that plaintiff was not engaged in his routine duties in his customary fashion. There is no evidence to support the Commission's finding that he was, and we so hold.

[2] On appeal, Northeast contends the plaintiff's claim should have been dismissed for failure to comply with G.S. 97-22. That statute requires an injured employee to give to his employer written notice of the accident as soon thereafter as practicable and provides that "no compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby." Northeast argues that plaintiff's failure to give immediate written notice "made it difficult, if not impossible, for a full reconstruction of the events" because "the company was forced to attempt a reconstruction at a much later date." The record does not support this contention. It is not clear from the record whether crew leader Kerr repeated to any superiors what he was told by plaintiff two weeks after plaintiff's injury. However, it is clear from the record that Northeast knew about the accident within a month of its occurrence. Northeast Vice President Hiehle testified that he learned of plaintiff's claim when the company received a doctor's bill "in late February or early March of 1982." A claims adjuster for Northeast's insurance carrier spoke with plaintiff by phone in March soon after plaintiff was released from the hospital. The record shows Northeast was on notice of the injury to plaintiff soon after it occurred, certainly soon enough for a thorough investigation. Northeast could not have been prejudiced by plaintiff's failure to give written notice. Thus, there was no error in the Commission's not finding the plaintiff failed to give timely written notice or in its not dismissing plaintiff's claim for not giving timely written notice.

The Industrial Commission's Opinion and Award denying plaintiff's claim is reversed and the cause is remanded to the Commission for entry of an appropriate award.

Reversed and remanded.

Judges WELLS and JOHNSON concur.