JOHN D. THACKER, EMPLOYEE/PLAINTIFF v. CITY OF WINSTON-SALEM, EMPLOYER/SELF-INSURED, DEFENDANT

No. COA96-680

(Filed 18 March 1997)

**Workers' Compensation § 164 (NCI4th)— police officer—accident—pre-existing condition not aggravated**

The Industrial Commission erred by awarding workers' compensation benefits to plaintiff, a police officer who was injured in a car accident while working, where there was no causal relationship between plaintiff's pre-existing back condition and his accident. The evidence presented at the hearing suggested that plaintiff had a degenerative back condition that was expected to deteriorate over time, ultimately resulting in surgery to relieve plaintiff's pain; plaintiff had begun to experience increased pain several months prior to his accident; and the accident did not aggravate plaintiff's back condition.

**Am Jur 2d, Workers' Compensation §§ 317-319.**

Appeal by defendant from Opinion and Award of the Full Commission entered 26 March 1996. Heard in the Court of Appeals 20 February 1997.

*Randolph M. James, P.C., by Randolph M. James and Steven S. Long, for plaintiff-appellee.*

*Bennett & Blancato, L.L.P., by Sherry R. Dawson, for defendant-appellant.*

WYNN, Judge.

In August 1992, plaintiff, a Winston-Salem police officer, suffered a violent coughing attack and blacked out after placing his car in drive to leave the parking lot where he had stopped to talk to another officer. His patrol car then travelled down an embankment, knocked over a fire hydrant and came to rest in the median of an adjacent road. Doctors at Forsyth Memorial Hospital treated and released plaintiff for facial bruises. Both the Forsyth County EMS record and the hospital's Emergency Department Nurse's Sheet indicate that plaintiff complained of neck pain. The emergency room record further notes that plaintiff had a past medical history of bone spurs.

In June 1990, two years prior to the accident, plaintiff consulted a neurosurgeon, Dr. Ernesto de la Torre, for neck pain which radiated to his shoulder and arm. Dr. de la Torre diagnosed radiculopathy due to cervical arthritis known as cervical spondylosis, a condition he explained to be generally caused by "the wear and tear of life," but can also be caused by chronic, repeated trauma to the cervical spine. Dr. de la Torre decided on a conservative course of treatment, without surgery, as long as plaintiff could tolerate the pain, and anticipated that surgery would be necessary to remove the bone spurs as his condition worsened over time and the pain increased.

A month after the subject accident, plaintiff again consulted Dr. de la Torre and told him that for the past five or six months the original pain going from the neck to the arms had increased. In October 1992, Dr. de la Torre operated on plaintiff and removed the bone spurs which were causing his pain.

In February 1993, plaintiff filed a claim for workers' compensation benefits and defendant City of Winston-Salem denied liability. Following a hearing, Deputy Commissioner Jan N. Pittman awarded plaintiff temporary total disability benefits and medical expenses. Upon appeal, the Full Commission affirmed the Deputy Commissioner's award concluding that "plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer which resulted in multiple abrasions and an

aggravation of plaintiff's pre-existing back condition." Defendant appeals from the Opinion and Award of the Full Commission.

On appeal, defendant asks this Court to consider whether the Full Commission erred by awarding workers' compensation benefits when none of the expert medical evidence supported the inference that the August 1992 accident caused plaintiff's back condition and subsequent surgery. Defendant argues that the evidence before the Commission was insufficient, as a matter of law, to support its findings of fact and conclusion of law that the accident aggravated plaintiff's back condition or caused his surgery, and the opinion and award based thereon. We agree.

As a preliminary matter, we note that "[w]hen reviewing appeals from the Industrial Commission, the Court is limited in its inquiry to two questions of law: (1) whether there was any competent evidence before the Commission to support its findings of fact; and (2) whether the Commission's findings of fact justify its legal conclusions and decision." *Sanderson v. Northeast Construction Co.*, 77 N.C. App. 117, 120-21, 334 S.E.2d 392, 394 (1985).

In the workers' compensation appeal of *Click v. Freight Carriers*, 300 N.C. 164, 265 S.E.2d 389 (1980), our Supreme Court addressed the quantum and quality of the evidence required to establish *prima facie* the causal relationship between the accident in question and the injury. The Court acknowledged that there will be "many instances in which the facts in evidence are such that any layman of average intelligence and experience would know what caused the injuries complained of." *Id.* at 167, 265 S.E.2d at 391 (quoting *Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E.2d 753, 760 (1965)). Correspondingly, the Court recognized: "On the other hand, where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Id.* The case before us falls into the latter category. *See also, Gilmore v. Board of Education*, 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942) (To establish the necessary causal relationship, "the evidence must be such as to take the case out of the realm of conjecture and remote possibility.")

Our examination of the record in the instant case reveals insufficient medical evidence to support the Commission's finding that the

accident aggravated plaintiff's back condition. All the medical evidence corroborates Dr. de la Torre's testimony regarding his examination of plaintiff in September 1992, following the accident:

Q. Do you recall now whether the x-rays showed a worsening of the cervical spondylosis since 1990?

A. I don't recall. Let me see if I wrote something about that. (Witness examining paper writings.) I wrote this: "X-rays were seen today. He does have the same cervical spondylosis—C-5 and C-6—like previously. He has narrowing of the frame in all levels signifying some generalized arthritic process." So, obviously, I have the impression by reading my own notes that he looked as bad as he was before but not necessarily worse objectively.

Q. So his condition that you had seen him for in 1990 had continued to exist since that time?

A. Yeah. Uh-huh (yes). Correct.

Q. Looking at the addendum to your letter—

A. Uh-huh (yes).

Q. —did he ask you at that time whether the spondylosis he presented for on September the 22nd, 1992, could have been produced by the automobile accident he had in August of '92?

A. Yeah. Well, I told him that the spondylosis was present long before that—probably a few years before and the accident itself had nothing to do with the production of cervical spondylosis.

Q. Do you remain of that same opinion today?

A. Yeah. I think that cervical spondylosis was existing there for years before he had the accident.

Q. In light of the fact that Mr. Thacker told you that he had worsening pain in his neck for the past five or six months—that would have been back to—let's see—April or May of 1992—do you have any reason to believe that the spondylosis was made worse by the accident that occurred in August of '92?

A. Well, it looked, to me, like the worsening had been occurring already before the accident.

. . . .

Q. (By Ms. Dawson) Dr. de la Torre, based on your findings and examination of Mr. Thacker in 1990 based on what he told you when he came back to you in 1992 about his symptoms and your findings at that time, do you have an opinion as to whether the surgery you performed in October of 1992 would have been necessary if Mr. Thacker had not had the automobile accident in August of 1992?

A. Oh, I can't say that for sure; but many of these people with cervical spondylosis eventually end up in surgery whether they have accidents or not. But, also, it is also well known that automobile accidents and trauma can increase the pain of a previously existing problem like cervical spondylosis and increase the pain to the point that it requires surgery.

So, he might have required surgery whether he has [sic] had the accident or not; but, certainly, having had an accident would have been a factor in increasing his possibilities of pain.

Q. Can you say that the accident was the reason he had to have the surgery in October, 1992?

A. No. No, I could not say that.

Plaintiff argues that Dr. de la Torre's testimony in response to a hypothetical question supports the Commission's findings. Plaintiff's counsel asked Dr. de la Torre to assume that in the accident, the impact of the vehicle as it went over the embankment propelled him into the roof of the car and he struck his head on the roof. He then asked, "Would that fact, if it were true, bolster an opinion that Mr. Thacker may have aggravated his pre-existing condition by virtue of the collision?" Dr. de la Torre responded, "Yes, I have an opinion about that. I think that it is quite possible that injuries of that kind in an accident such as what he had could have produced a definite worsening of his symptoms." However, we find that this evidence elicited by plaintiff's hypothetical question was not competent because it required Dr. de la Torre to assume the truth of facts that the record does not support, namely that plaintiff hit his head on the roof of the car in the accident, and thus, the doctor's response was entirely based on conjecture. In fact, the record contains a letter from Dr. William A. Brady, the doctor to whom plaintiff was referred for nerve conduction studies, to Dr. Walter Wray, plaintiff's family physician, which suggests that plaintiff's injuries were to his lower face and thus are not consistent with hitting his head on the roof of the

car. Dr. Brady wrote: "He damaged the car and apparently received facial trauma with bleeding of his nose and edema in his mouth region. He had no lacerations over his scalp."

Thus, the record is replete with medical evidence which suggests that plaintiff's cervical spondylosis was a degenerative condition that was expected to deteriorate over time ultimately resulting in surgery to remove the bone spurs causing the pain; that plaintiff had begun to experience increased pain several months prior to the accident; and that the accident did not aggravate his back condition and necessitate surgery, rather the progression of his back condition resulted in surgery. Moreover, the record is devoid of any medical evidence to establish the necessary causal relationship without conjecture and remote possibility. Therefore, since we find the competent evidence insufficient to support the Commission's findings and conclusion that plaintiff's accident aggravated his pre-existing back condition, we must reverse.

Reversed.

Judges LEWIS and MARTIN, Mark D. concur.