***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Phillips.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties were subject to and bound by the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The North Carolina Industrial Commission had jurisdiction of the parties and of the subject matter
4. The plaintiff worked for the defendant-employer from September 10, 2001, until February 8, 2002, and earned an average weekly wage of $684.00.
5. The plaintiff underwent neurolysis of the left median nerve on March 10, 2003, and neurolysis of the right median nerve on May 27, 2003.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff completed high school in 1985 and then attended a truck driving school. Thereafter, he worked constructing manufactured homes for approximately six months. The plaintiff subsequently became employed driving trucks, both in short- and long-haul jobs.
2. The plaintiff began work for the defendant-employer on September 10, 2001, as a truck driver. The defendant-employer is a trucking company that operates approximately 83 trucks, all of which were maintained by the employer's shop. Pursuant to U.S. Department of Transportation regulations, maintenance and repair records of its trucks were maintained by the employer.
3. The plaintiff was assigned to drive truck No. 49940, a 1999 Freightliner tractor. During the period the plaintiff worked for the defendant-employer, he was required to maintain a daily log on which he would record his activities and daily truck inspections. He was also required to report maintenance problems in his daily log and by Qualcomm message.
4. The plaintiff was also assigned a ComData card that was used to purchase fuel on credit at participating truck stops. He could also seek reimbursement for out-of-pocket expenses. Every payment and reimbursement made to the plaintiff was documented in the Pay History. (Stipulated Exhibit 3, Plaintiff's Exhibit 18)
5. The plaintiff testified that when he began driving Truck No. 49940, he noticed vibration in the steering wheel and that the truck had a slight pull to the right. The stipulated maintenance records for Truck No. 49940 document that muffler clamps were installed on September 8, 2001; low beam lights were replaced on September 11, 2001; the front end of the truck was aligned, new front and rear tires were installed, and a complete "B" service was performed on September 21, 2001; the truck received another "B" service on December 15, 2001; and the right and left steer king pins were inspected by Triad Freightliner of Greensboro on August 20, 2002. These were found to have been within factory specifications.
6. A "B" service was a complete inspection and service of the truck, including changing the oil and filters; inspecting the lights, tires, brakes, fluids, and oils, including power steering fluid; and making minor repairs. Steering alignment was checked with a portable alignment machine that was kept in the employer's shop.
7. The plaintiff was unable to state when new tires were placed on the truck, but he did admit that the vibration stopped when new tires were installed on the truck. The new tires were installed on September 21, 2001, approximately 10 days after the plaintiff started driving for defendant-employer.
8. The plaintiff alleged that the power steering hose was leaking and that he purchased eight to ten ounces of power steering fluid between three and six times. He stated that each time he purchased power steering fluid he used either the ComData card or his own money for which he was reimbursed by the employer. The ComData records failed to document the plaintiff's purchases, and his Pay History does not reflect any reimbursement for the purchase of power steering fluid.
9. The plaintiff was required by the defendant-employer to document truck maintenance and repair problems by Qualcom communication. Although the record reveals approximately 2,500 Qualcomm communications between the plaintiff and the defendant-employer's dispatcher, the plaintiff never reported any steering or vibration problem with his truck. In addition to the Qualcomm communications, the plaintiff was required by the defendant-employer to document truck maintenance and repair problems in his daily driver's log. Although the plaintiff testified that he still maintained his log for the period of time in which he drove for the defendant-employer, he was unable to provide any record of a steering or vibration problem with his truck.
10. Joel Pegram, an expert in Freightliner truck maintenance, testified that Truck Number 49940 was inspected at Triad Freightliner at the request of the employer. That model of truck was equipped with steering hubs and king pins manufactured by ArvinMeritor. The inspection revealed that both the right and left hubs and steering king pins were within factory specifications. There was no indication that the truck was pulling to one side or the other.
11. The plaintiff left his employment on February 8, 2002, and told the defendant-employer that he was taking a two-week leave for personal reasons. When the plaintiff-employee did not return after two weeks, he was terminated for excessive absenteeism.
12. When the plaintiff left his employment on February 8, 2002, he did not tell the defendant-employer that the reason he was leaving was due to discomfort in his hands and wrists.
13. Dr. Rao Kothapalli performed a carpal tunnel release on the plaintiff's left wrist on March 10, 2003. He performed the same procedure on the plaintiff's right wrist on May 27, 2003. Dr. Kothapalli could not state to a reasonable degree of medical certainty as to what caused the plaintiff's carpal tunnel syndrome.
14. Dr. Gilbert Whitmer was of the opinion that operating a truck that pulled to the left such that plaintiff would have to make gripping maneuvers with his hands, combined with other gear stick operations and vibrations involved, would place a person at an increased risk for developing carpal tunnel syndrome. However, Dr. Whitmer believed that if indeed the plaintiff's truck was operating normally, then his carpal tunnel was idiopathic in origin. Dr. Whitmer was of the opinion that some carpal tunnel syndrome is due to idiopathic causes, and some is due to repetitive stress. Dr. Whitmer was unable to make a distinction as to whether the plaintiff's carpal tunnel was due to idiopathic causes or due to repetitive stress. Dr. Whitmer believed the plaintiff could return to driving a well-maintained truck.
15. The Full Commission finds that the plaintiff failed to prove that he recorded or reported a steering, power steering, vibration, or alignment defect in Truck No. 49940.
16. The Full Commission finds that the plaintiff failed to prove that he sought reimbursement for purchasing power steering fluid or for repairs to Truck No. 49940.
17. The Full Commission finds that the plaintiff failed to prove that he used the ComData card issued by the defendant-employer to pay for power steering fluid or for repairs to Truck No. 49940.
18. The Full Commission finds that the overwhelming weight of the evidence of record establishes that there was no significant steering, power steering, vibration, or alignment defect in Truck No. 49940 while it was driven by the plaintiff.
19. The Full Commission finds there to be insufficient medical evidence or expert opinion upon which to find that the activities of the plaintiff's job, as he performed them, caused or contributed to the development of the plaintiff's carpal tunnel syndrome, or placed him at an increased risk of developing carpal tunnel syndrome.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSION OF LAW
Plaintiff has failed to prove, by a preponderance of the evidence, that his employment placed him at an increased risk of developing carpal tunnel syndrome and, therefore, failed to prove that he contracted a compensable occupational disease. N.C. Gen. Stat. §97-53(13); Rutledge v. Tultex Corp., 308 N.C. 85, 93,301 S.E.2d 359, 365 (1983); Hobbs v. Clean ControlCorp., 154 N.C. App. 433, 436, 571 S.E.2d 860, 862
(2002); and Thacker v. City of Winston-Salem,125 N.C. App. 671, 675, 482 S.E.2d 20, 23; disc.review denied, 346 N.C. 289, 487 S.E.2d 571 (1997).
 ***********
Based upon the foregoing findings of fact and conclusion of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim, including his claim for temporary total disability, permanent partial disability, and medical compensation is hereby DENIED.
2. Defendants shall bear the costs.
This 15th day of August 2005.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER