***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS *Page 2 
1. The parties are correctly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
2. The parties are properly before the North Carolina Industrial Commission, the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings, this matter is subject to the North Carolina Workers' Compensation Act, and the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. An employment relationship existed between the parties at the time of the alleged injury relevant to these proceedings on February 8, 2006.
4. At the time of the alleged injury relevant to these proceedings on February 8, 2006, Defendant-Employer was self-insured, with Sedgwick CMS as the third-party administrator, and Defendant-Employer had a policy of excess insurance coverage with Defendant-Carrier.
5. Plaintiff's average weekly wage was $540.81, yielding a compensation rate of $360.54.
6. Plaintiff alleges that she sustained an injury by accident to her back arising out of and in the course and scope of her employment with Defendant-Employer on February 8, 2006.
7. The parties stipulated to the following document being admitted into evidence as Stipulated Exhibit One (1) — Pre-trial Agreement as modified and initialed by the parties.
8. The parties stipulated to the following documents being admitted into evidence as Stipulated Exhibit Two (2) — Plaintiff's medical records.
9. The parties stipulated to the following documents being admitted into evidence as Stipulated Exhibit Three (3) — North Carolina Industrial Commission forms and filings. *Page 3 
10. The parties stipulated to the following documents being admitted into evidence as Stipulated Exhibit Four (4) — Plaintiff's personnel file.
 *********** ISSUES
The issues to be determined are whether Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer, and if so, to what workers' compensation benefits is she entitled?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 66 years old, with a date of birth of June 19, 1943. Plaintiff completed the 11th grade, and then years later went back to school and obtained her general equivalency diploma (GED). Plaintiff began working for Defendant-Employer on August 31, 1981, and worked there for over 25 years. While employed by Defendant-Employer, Plaintiff worked in several departments such as health safety, the shipping room, electronics, the machine shop, and the packing department, which was her last job.
2. Plaintiff has a history of lower back problems. On August 14, 1998, Plaintiff had a non-work-related fusion surgery at the L3-L5 levels of the spine performed by Dr. Paul John Tsahakis, an orthopaedist. Plaintiff was out of work for a year after the August 14, 1998 fusion surgery, and then returned to work for Defendant-Employer performing her previous job duties. From October 15, 2002 through November 25, 2002, Plaintiff was out of work and on short-term disability due to back pain resulting from kidney stones; however, this leave period was not the *Page 4 
result of a workers' compensation injury, and Plaintiff did not have any restrictions. From August 7, 2004 through September 29, 2004, Plaintiff was out of work and on short-term disability due to right-sided back pain and sciatica radiating into her hips. Plaintiff's August 7, 2004 through September 29, 2004 leave period was not the result of a workers' compensation injury, and afterward, she returned to work at her previous job, but with restrictions that Defendant-Employer accommodated.
3. From September 29, 2004 through February 8, 2006, Plaintiff did not miss any work due to her lower back problems. However, Plaintiff did receive treatment from Dr. Tsahakis on August 23, 2005 for complaints of lower back pain, and underwent lumbar magnetic resonance imaging (MRI) on October 18, 2005, which revealed "some changes at the L2-L3 level, a small protrusion [but] no significant neurocompression." Due to the contradictory information contained in the medical records from Plaintiff's August 23, 2005 visit with Dr. Tsahakis, it is unclear whether she had complaints of radicular pain at that time.
4. Plaintiff filed approximately seven (7) workers' compensation claims over the course of over 25 years of working for Defendant-Employer, with all of these claims being "medical only" claims in which she only received medical compensation, except for a carpal tunnel syndrome claim, in which she received both medical and indemnity compensation. In addition, Plaintiff went out of work on family medical leave several times in order to care for other family members. Plaintiff is aware that if she becomes injured at work, she is eligible for workers' compensation benefits, but that if she has a medical condition that is not work-related, she is not eligible for workers' compensation benefits, but rather, short-term disability benefits.
5. On February 8, 2006, while working for Defendant-Employer, Plaintiff was walking with an empty box in her hands when she caught her right foot on a box on the floor, *Page 5 
lost her balance, and tripped; however, she caught herself by tensing up and lunging forward, and managed not to fall. As Plaintiff tripped, she felt a strain or pull in her back and neck, but continued to work. Later that same day, when Plaintiff attempted to stand up to go to the bathroom, she was unable to do so due to the pain in her neck and back, which was now radiating into her left lower extremity. Plaintiff reported this tripping incident to her supervisor at the end of her shift, and her supervisor completed an accident report. Defendant-Employer then instructed Plaintiff to go to Carolinas HealthCare Urgent Care Monroe, where she received a diagnosis of acute muscle strain and cervical/lumbar myofasciitis. In addition, Plaintiff received instructions to remain out of work until February 13, 2006.
6. On February 12, 2006, Plaintiff returned to Carolinas HealthCare Urgent Care Monroe, at which time she stated that she was feeling much better, and denied having any problems. A physical examination revealed that Plaintiff was ambulating well. Plaintiff received instructions to return to work the following day and to modify her activity as needed.
7. When Plaintiff returned to work, she testified that she continued to have intermittent lower back pain radiating down her left lower extremity because she was unable to take her pain medication at work. In addition, Plaintiff testified that she would experience lower back pain radiating down her left lower extremity if she was on her feet for too long. However, there is no documentation in Plaintiff's medical records that she complained of radicular pain until May 18, 2006, when she reported having lower back pain radiating down her left lower extremity for the past month.
8. On February 20, 2006, Plaintiff presented to Dr. John Cuthbertson Vick, a family medicine specialist, complaining of a severe cough. Although Plaintiff testified that she also told Dr. Vick about her continued lower back and left lower extremity problems, he did not document *Page 6 
this in the progress note for this visit. Dr. Vick diagnosed Plaintiff with bronchitis and wrote her out of work until February 26, 2006. On February 24, 2006, Plaintiff returned to Dr. Vick, complaining that she was not better and might have new symptoms, but there was no documentation in the progress note for this visit that she complained about lower back and left lower extremity problems. On February 28, 2006, Plaintiff again returned to follow up with Dr. Vick regarding her bronchitis. Dr. Vick's progress note for this visit also made no mention of Plaintiff reporting lower back and left lower extremity problems.
9. On March 7, 2006, Plaintiff returned to follow up with Dr. Vick regarding her bronchitis. In Dr. Vick's handwritten progress note for this visit, he noted that Plaintiff complained of pain in her lower back. It is unclear whether Dr. Vick's handwritten note for this visit also documents that Plaintiff complained of radicular pain, as a part of the note could indicate either "no sciatica" or "with sciatica." It appears to the Full Commission after comparing this handwritten entry with other similar handwritten entries that the notation indicates "no sciatica." The results of Dr. Vick's physical examination of Plaintiff revealed a negative straight-leg raise test, full range of motion of her extremities, and normal motor and reflex examinations. Dr. Vick diagnosed Plaintiff with degenerative disc disease of the lower spine, and instructed her to return to work on March 9, 2006.
10. On April 20, 2006, Plaintiff completed a Form 18 regarding her February 8, 2006 work injury, and the North Carolina Industrial Commission stamped it as received on May 30, 2006. Three (3) copies of this same Form 18 from Plaintiff's personnel file with facsimile date stamps of May 23, 2006 and May 24, 2006 are part of the evidence of record. It is the standard practice of the North Carolina Industrial Commission to send correspondence acknowledging receipt of the Form 18 to all parties, including employers and insurance carriers. Thus, not only *Page 7 
did Defendant-Employer have actual notice of Plaintiff's February 8, 2006 work injury on the date of the work injury, but also notice of Plaintiff's intent to pursue it as a workers' compensation claim by at least May 2006.
11. After Plaintiff filed the Form 18 regarding her February 8, 2006 work injury, Defendant-Employer failed to admit, deny, or pay without prejudice Plaintiff's claim until June 26, 2007 when Defendant denied the claim on Form 61. Because Carolinas HealthCare Urgent Care Monroe, the health care provider to which Defendant-Employer referred Plaintiff after her February 8, 2006 work injury, wrote Plaintiff out of work for more than one (1) day, Defendant-Employer's claim that Plaintiff's workers' compensation claim was a "medical only" claim is precluded by Industrial Commission Workers' Compensation Rule 404A(7)(a). Thus, the Full Commission finds that Plaintiff's workers' compensation claim in connection with her February 8, 2006 work injury must be treated as a denied claim even before the Form 61 denial was filed. As a denied claim, Defendant-Employer had no right to direct Plaintiff's medical treatment.
12. On May 18, 2006, Plaintiff presented to Dr. Valencia Tellis, a family medicine specialist who is a partner of Dr. Vick, with complaints of lower back pain, which Dr. Tellis referred to as chronic, based upon a review of Plaintiff's medical history. Plaintiff also complained of left anterior thigh pain for the past month and bilateral upper extremity numbness. Dr. Tellis diagnosed Plaintiff with chronic lower back pain with some acute changes, muscle spasms, radiculopathy of the lower extremities and of the cervical spine, and degenerative joint disease of the cervical spine. On this same day, Dr. Vick wrote Plaintiff out of work until she received a surgical evaluation, and diagnosed her with severe radicular pain. Based upon the progress note for this visit, Plaintiff's report of radicular pain indicates that it started in April 2006. *Page 8 
13. On May 22, 2006, Plaintiff underwent another MRI of the lumbar spine, which revealed degenerative disc disease with disc bulging, but no significant encroachment upon the neural structures, and no spinal stenosis. A comparison of the May 22, 2006 MRI to the October 18, 2005 MRI indicated no significant change. Also on May 22, 2006, Plaintiff underwent a cervical MRI, which revealed severe degenerative changes at the C5-C6 level of the spine, disc bulging, but no definite impingement on the cervical spinal cord.
14. In response to Dr. Vick's recommendation that Plaintiff receive a surgical evaluation, she called Dr. Tsahakis' office in order to schedule an appointment. Plaintiff learned that Dr. Tsahakis would not treat workers' compensation patients. Because Dr. Tsahakis successfully performed Plaintiff's previous fusion surgery, she wanted him to evaluate her current lower back and left lower extremity problems. Thus, Plaintiff made the decision to go ahead and schedule an appointment with Dr. Tsahakis and use her health insurance to pay for it.
15. Even though Plaintiff was not truthful with Dr. Tsahakis when she led him to believe that the treatment she sought from him was not for a work-related injury, since Defendant-Employer did not have the right to direct her medical treatment at the time, Plaintiff was free to seek treatment from the health care provider(s) of her choice. Plaintiff's conduct may have prejudiced Dr. Tsahakis, but Defendant-Employer cannot claim prejudice, as this was not an admitted claim.
16. On May 30, 2006, Plaintiff presented to Dr. Tsahakis with complaints of intermittent numbness in her arms and left lower extremity over the past couple of months. Dr. Tsahakis ordered a computed tomography (CT) myelogram of Plaintiff's cervical and lumbar spine, as well as physical therapy. In addition, Dr. Tsahakis continued to keep Plaintiff out of *Page 9 
work, and signed a short-term disability document stating that Plaintiff's current disability was not the result of a work injury.
17. On June 15, 2006, Plaintiff returned to Dr. Tsahakis with complaints of "miserable" lower back and left lower extremity pain. The results of the CT myelogram ordered by Dr. Tsahakis revealed "fairly severe stenosis at the L2-3 secondary to spondylolisthesis and herniated nucleus pulposus on the left." Dr. Tsahakis noted that Plaintiff was at risk for spinal fluid leakage, and so he recommended a decompression with possible instrumentation surgery at the L2-L3 level of the spine. On June 22, 2006, Dr. Tsahakis again signed a short-term disability document stating that Plaintiff's current disability was not the result of a work injury.
18. On July 24, 2006, Plaintiff again returned to Dr. Tsahakis, at which time he noted "no change" in her lower back and left lower extremity complaints. Dr. Tsahakis scheduled Plaintiff for decompression with possible instrumentation surgery at the L2-L3 level of the spine on August 9, 2006, estimated that she would be out of work for at least three (3) to four (4) months afterward, and noted Plaintiff's desire to return to work after recovering from the surgery. However, Plaintiff decided to cancel the decompression with possible instrumentation surgery at the L2-L3 level of the spine because her lower back and left lower extremity complaints seemed to be improving.
19. On August 29, 2006, Plaintiff returned to work for Defendant-Employer, as her lower back and left lower extremity complaints had subsided. By October 5, 2006, Plaintiff reported to Dr. Tsahakis she had no pain in her back or either leg. Her neurologic exam was normal and Dr. Tsahakis released her. Dr. Tsahakis' found her pain pattern "a little unusual" especially at the L-3 level. Plaintiff's presentation on October 5, 2006 was consistent with her complaints of waxing and waning pain. On December 26, 2006, Plaintiff presented again to Dr. *Page 10 
Tsahakis with complaints of increasing lower back, bilateral lower extremity, and neck pain. As a result of the return of Plaintiff's lower back and left lower extremity complaints, Dr. Tsahakis ordered another lumbar MRI and again scheduled a decompression with possible instrumentation surgery at the L2-L3 level of the spine.
20. On February 12, 2007, Plaintiff underwent a decompression and discectomy surgery with instrumentation and screws at the L2-L3 level of the spine. On March 1, 2007, Plaintiff returned to Dr. Tsahakis, at which time he noted that she felt great, with her lower back and left lower extremity pain essentially resolved. However, Dr. Tsahakis continued to keep Plaintiff out of work until further notice.
21. On May 1, 2008, Plaintiff again returned to Dr. Tsahakis, at which time he noted that she "does not have much in the way of back or leg pain," but that she did have some complaints regarding her neck, "particularly with rotation." Dr. Tsahakis diagnosed Plaintiff with advanced degenerative disc disease at the C5-C6 level of the spine. Dr. Tsahakis also issued permanent work restrictions of sedentary work with the ability to shift positions as necessary, no repetitive bending, lifting, or twisting, and a five (5) to 10 pound lifting restriction. According to Plaintiff, she is not aware of any position with Defendant-Employer that she could perform with these restrictions.
22. At Dr. Tsahakis' deposition, he opined that Plaintiff has a 25 percent permanent partial disability rating to her back related specifically to her February 12, 2007 decompression and discectomy surgery with instrumentation and screws at the L2-L3 level of the spine. Dr. Tsahakis was also of the opinion that Plaintiff should have been written completely out of work from February 12, 2007 through May 1, 2008, when he issued her permanent work restrictions. *Page 11 
However, Dr. Tsahakis did not offer any opinions specifically related to maximum medical improvement.
23. Plaintiff eventually retired from Defendant-Employer, and is receiving a pension. In addition, Plaintiff also began receiving Social Security disability benefits. Plaintiff did not return to work for Defendant-Employer after February 9, 2007, and did not seek employment elsewhere.
24. As of the date of hearing before the Deputy Commissioner, Plaintiff continued to have neck complaints. Plaintiff cannot turn her head to the left due to neck pain. Plaintiff is receiving physical therapy for the pain in her neck and shoulder.
25. Ms. Carole Ann Greene is employed by Defendant-Employer in their human resources department, and is responsible for dealing with workers' compensation and short-term disability issues. According to Ms. Greene, once an employee completes 10 years of service with Defendant-Employer, they get 100 percent of their wages under short-term disability benefits. Further, Ms. Greene stated that Plaintiff knew the difference between absences due to short-term disability versus absences due to workers' compensation. The documents produced by Ms. Greene on behalf of Defendant-Employer indicate that Plaintiff received greater benefits through short-term disability benefits for the lower back and left lower extremity problems associated with her February 8, 2006 work injury than she would have received through workers' compensation benefits.
26. With respect to the causation of Plaintiff's lower back and left lower extremity problems associated with her February 8, 2006 work injury, Plaintiff's counsel posed a lengthy hypothetical question to Dr. Tsahakis. While listening to the hypothetical question, Dr. Tsahakis interrupted Plaintiff's counsel on several occasions in order to clarify several points, and to state, *Page 12 
among other things, that he did not want to "assume" facts, and that he did not want to "speculate." Plaintiff's counsel asked Dr. Tsahakis to assume that Plaintiff's left leg pain began with the February 8, 2006 work injury, and was unresolved from the date of injury until Plaintiff saw him on May 30, 2006. When Dr. Tsahakis sought clarification of whether there was a period of time after the February 8, 2006 injury that Plaintiff did not complain of left leg pain, Plaintiff's counsel asked him to assume that she continually complained of left lower extremity pain following her February 8, 2006 work injury. The Full Commission finds as fact that Plaintiff did not complain of left leg pain continually from the date of her February 8, 2006 injury. Further, Plaintiff's counsel asked Dr. Tsahakis to assume that when Plaintiff's medical records documented complaints of left ankle pain, this meant left leg pain, and that when he saw Plaintiff in 2005, she did not have any radicular back complaints. Based upon the facts he was asked to assume, Dr. Tsahakis opined that Plaintiff's February 8, 2006 work injury caused her need for the February 12, 2007 decompression and discectomy surgery with instrumentation and screws at the L2-L3 level of the spine that he performed. The Full Commission gives little weight to this opinion testimony of Dr. Tsahakis, since his opinion appears to rely heavily on the assumption that plaintiff's left leg pain began at the time of injury and never stopped up to the time he saw Plaintiff on May 30, 2006. The greater weight of the evidence establishes that Plaintiff denied having any problems on February 12, 2006 and did not complain of lower back and left leg problems to Dr. Vick on February 20, 24, or 28, 2006.
27. On May 3, 2008, Dr. Robert William Elkins, an orthopaedist, performed a medical records review concerning Plaintiff's February 8, 2006 work injury; however, Dr. Elkins never personally examined Plaintiff or reviewed any of her radiological films. Dr. Elkins opined that Plaintiff's lower back and left lower extremity problems and her need for surgery were *Page 13 
unrelated to her February 8, 2006 work injury. Dr. Elkins was of the opinion that for years, Plaintiff's back condition waxed and waned, that when she tripped at work on February 8, 2006, she sustained a lumbar sprain which later resolved and caused no permanent objective damage, and that Plaintiff's lower back and left lower extremity problems and her need for surgery were the result of the progression of degeneration at an adjoining segment of her prior fusion at the L3-L5 levels of the spine. The Full Commission gives great weight to the opinion testimony of Dr. Elkins.
28. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer on February 8, 2006 resulting in a lumbar strain and some cervical radiculopathy but that these conditions did not cause any permanent damage.
29. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff failed to meet her burden of proving that her February 8, 2006 work injury materially aggravated her pre-existing, non-disabling lower back problems, to the extent that her work injury necessitated her decompression and discectomy surgery with instrumentation and screws at the L2-L3 level of the spine.
30. Plaintiff has a 25 percent permanent partial disability to her back related specifically to her February 12, 2007 decompression and discectomy surgery with instrumentation and screws at the L2-L3 level of the spine, which is unrelated to her work injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 14 
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer on February 8, 2006 to her lower back and left lower extremity. N.C. Gen. Stat. § 97-2(6) (2008).
2. In addition to proving that Plaintiff sustained an injury by accident arising out of and in the course and scope of her employment, she must also show that her February 8, 2006 work injury materially aggravated her pre-existing, non-disabling lower back problems to such an extent that she required surgery. Holley v.ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v.Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000);Morrison v. Burlington Industries,304 N.C. 1, 282 S.E.2d 458 (1981). "[I]n cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Holley,357 N.C. 228, 232, 581 S.E.2d 750, 752 (2003). However, an expert opinion solicited through the assumption of facts unsupported by the evidence of record is insufficient to establish causation.Thacker v. City of Winston-Salem,125 N.C. App. 671, 482 S.E.2d 20, disc. rev. denied,346 N.C. 289, 487 S.E.2d 571 (1997).
3. In the case at bar, Dr. Paul John Tsahakis opined that Plaintiff's February 8, 2006 work injury caused her need for the February 12, 2007 decompression and discectomy surgery with instrumentation and screws at the L2-L3 level of the spine that he performed. However, the Full Commission has found that the hypothetical question posed by Plaintiff's counsel in order to elicit Dr. Tsahakis' opinion supporting causation contained some factual representations, which are unsupported by the evidence of record. Thus, Dr. Tsahakis' opinion is insufficient establish causation. Thacker v. City of Winston-Salem,125 N.C. App. 671, 482 S.E.2d 20, disc. rev. denied,346 N.C. 289, 487 S.E.2d 571 (1997). *Page 15 
4. Plaintiff failed to prove that her February 8, 2006 work injury materially aggravated her pre-existing, non-disabling lower back problems, and necessitated a decompression and discectomy surgery with instrumentation and screws at the L2-L3 level of the spine.Holley, 357 N.C. 228, 581 S.E.2d 750 (2003); Young,353 N.C. 227, 538 S.E.2d 912 (2000).
5. The initial medical treatment Plaintiff received for her lower back and left lower extremity was causally related to her compensable injury; however, the medical treatment Plaintiff received after her May 22, 2006 MRI's is not related to her compensable injury. N.C. Gen. Stat. § 97-25 (2008).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for additional workers' compensation benefits, including, but not limited to any and all treatment after May 22, 2006 is hereby DENIED.
2. Defendant shall pay the costs of these proceedings.
This the ___ day of January 2010.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING: *Page 16 
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1